The opinion of the court was delivered by
Watkins, J.
Plaintiff seeks to recover of the defendantt he sum of five thousand dollars, the quantum, meruit value of services which he renderedto her ward, as attorney at law in the matter of the succession of her father — she being the sole surviving legal and forced heir of the deceased, and said services having enured to her benefit.
His claim mainly rests upon the hypothesis that: (1) He was instrumental in recovering for the minor an allowance of one thousand six hundred and twenty-five dollars, on the amount of the share which was coming to her from a former community; (2) in striking down and ridding the realty which was bequeathed to her by her father’s will, worth forty-five thousand dollars,of a lifetime usufruct which was asserted by the surviving widow of the deceased — the stepmother of the minor.
The defence is .threefold: (1) That the services of the grandfather of the minor, whom plaintiff represented, were ex gratia under the law, and placed upon the minor no legal obligation to pay for the services rendered by the plaintiff; (2) that the services rendered by the plaintiff were not beneficial to the minor, and accomplished nothing, of themselves, which would not have otherwise resulted; (3) that the amount claimed is excessive and oppressive.
On the trial these questions were thoroughly traversed by the litigants, and testimony pro and con adduced; and judgment was pronounced in favor of the plaintiff, and the defendant has appealed.
Junius Hart died on the 20th of September, 1898, and his estate was placed under administration on the 9th of October following. He left a will, by the terms of which, Lena Oecile Hart, a minor child and sole surviving forced heir, having been born of the second *1119 marriage, was bequeathed the property known as No. 191 Oanal street, at the corner of Burgundy street, in the city of New Orleans, and his surviving widow, being of the third marriage, was bequeathed the balance of his estate and the usufruct of his share of the community property.
The will contained the further stipulation that the surviving widow should be the executrix, and one Washington P. Simpson tutor for the minor, and Dr. John J. Johnson alternate.
An estimative inventory was made and disclosed that the decedent’s estate aggregated one hundred and twenty-four thousand four hundred and two dollars and forty-three cents in value; and of this, fifty-four thousand five hundred dollars was attributed to real estate, and sixty-nine thousand nine hundred and two dollars and forty-three cents to the movable effects of various kinds.
The judge declined to confirm the appointment of Simpson as testamentary tutor to the minor, because he was a citizen of Georgia; and thereupon Wm. A. Arnold, as paternal grandfather of the child, acting on the advice of plaintiff as his counsel, presented a petition to the court praying to be appointed tutor, reciting the action of the court in failing to confirm the appointment of Simpson, and further alleging that Dr. Johnson, the alternate testamentary nominee for the tutorship, was likewise disqualified, being a citizen of Mississippi.
Soon afterward, Dr. Johnson appeared in court, petitioning for his confirmation as dative tutor, alleging himself to be a citizen of Louisiana.
To this application the grandfather filed an opposition, and prevented the issuance of letters of tutorship to him.
Subsequently the grandfather instituted proceedings and obtained a judicial sequestration of all the movable effects of the estate of the deceased, and had them taken by the sheriff out of the possession of one Julius Winter, to whom they had then been only recently confided by the surviving widow, under a power of attorney which conferred upon him unlimited powers of administration, and which specially authorized him “ to do and perform such acts connected with the administration of the estate of the decedent, as it was only competent for her as executrix, personally to perform,” etc. — the allegation of his petition being to the effect “that the said power of attorney was and is * * * intended to vest the said Juilus Win *1120 ter with full authority to administer the affairs of the succession whether the executrix was present or absent.”
It was also alleged in the grandfather’s opposition to the appointment and confirmation of Dr. Johnson as tutor, that he had contemporaneously executed a similar procuration to Julius Winter, containing broader and more extensive powers.
About the same time, Simpson obtained an order of appeal from the decree of the judge, refusing to appoint him tutor.
A little later, the property sequestered was bonded and released to the surviving widow.
Subsequently, one John Booth made application to be appointed tutor to the minor, the petition having been signed by the same counsel who had appeared for the widow in the proceedings above related. Nothing came of all these applications, as the grandfather furnished the requisite bond and security, and his appointment was confirmed.
In the meantime the widow moved to dissolve the sequestration without avail, and she thereupon filed her answer, setting up claim that all the estate was property of the late community between herself and her deceased husband, except the premises, 191 on Canal street, and that, although it was purchased prior to their marriage, and on that account an asset of a previous community, yet same was paid for to the extent of twenty thousand dollars out of funds of the last community of which she was a member, and repaired also to the extent of eighteen thousand dollars, likewise with such community funds.
This claim in her answer was, in effect, to charge the separate estate of the deceased, that is, to say, the premises, 191 Oanal street, which had been bequeathed to the minor with a debt of thirty-eight thousand dollars in favor of the last community, of which the widow was owner of one-half, and usufructuary by will of the remaining one-half during the period of her natural life.
Soon afterward the widow petitioned to the court to allow her to adopt the minor, and to that end prayed for the appointment of a tutor ad hoc to consider her application. This appointment was opposed by the grandfather on various grounds, but his opposition proved of no avail, and the appointment was made, the adoption of the minor approved and consented. to, and the tutorship of the grandfather terminated.
*1121 With the termination of the tutorship the sequestration proceedings ended, and the widow resumed the administration of the estate.
A few months later the widow filed her final account as executrix, on which she placed the minor as a creditor for the sum of five thousand dollars, as the net amount of cash due her from the former community, and as the owner of the premises 191 Canal street, subject to her testamentary usufruct, making claim for herself that she was, by the terms of the will, “ constituted residuary legatee and usufructuary for life of the aforesaid property bequeathed to the minor.”
The grandfather having been appointed and confirmed undertutor, opposed the account, claiming for the minor interest on its inheritance from its mother; that the sums paid on the property, 191 Oanal street, during the existence of the last community, were in-fact paid out of her father’s separate estate acquired before his last marriage; and that the widow, as residuary legatee, was not entitled to any greater sum than one-third of the deceased’s separate estate, and under no condition to the usufruct of the property beyond the child’s majority.
After quite a protracted trial there was a judgment sustaining the opposition; (1) so as to allow the minor interest on the five thousand dollars inheritance; (2) so as to disallow the widow’s claim to usufruct upon the property which was bequeathed to the minor from the separate estate of the deceased.
It is upon this statement that the plaintiff predicates his claim for services as an attorney representing the interests of the minor in this protracted and complicated litigation.
In his reasons for judgment we find a carefully digested summary of the foregoing proceedings, coupled with his observations upon their progress and result, of all of which he was personally cognizant, same having been conducted in his court, and immediately under his supervision.
And in this connection we can not as well state the reasons which influenced the mind of the judge a quo, as he has stated them herein, and we will append the following extract in place of observations of our own, viz.:
“By the terms of Junius Hart’s will the minor was to get the real estate on Oanal street, and the widow was to get the balance of the estate, as also the usufruct of the community property.
*1122 “ The estate owed the minor five thousand dollars, being the amount inherited from her by her deceased mother, together with interest thereon from the date of the mother’s death. I believe there was never any question as to the obligation for the principal amount, but the obligation for the interest was not recognized until the claim therefor was made by the plaintiff herein on behalf of the minor.
“ It was claimed by the widow that the usufruct conferred by the will included the real estate on Canal street, and this claim was contested on behalf of the minor by the grandfather, represented by the plaintiff, with the result that the minor was adjudged to be entitled to the usufruct as well as the ownership of said property, which is valued at forty-five thousand dollars. It is said that the particular point upon which the judgment in question was predicated was not suggested by the plaintiff. Whether this be so or not, it was the opposition filed by him which necessitated the investigation by which the attention of the court was attracted to the fact that the will gave the widow the usufruct of the community property, whilst the property in question was bought, though not entirely paid for, before the last marriage. In any event the opposition must have been good upon the grounds taken, in so far as to reduce the usufruct, in order that it might not infringe on the legitime of the minor.
“ In the final account of the widow as executrix, it is said that the community between herself and her late .husband should be held as of the value of ninety thousand two hundred and fifty-one dollars and one cent. In the judgment on that account, ordering its amendment, the value of said community is fixed at seventy-six thousand eight hundred and seventy-nine dollars and two cents. And whereas, by the terms of said account, the minor was to receive the five thousand dollars due her from her mother’s estate, without interest, and the naked ownership of the real estate on Oanal street, subject to the usufruct, for life of the widow, by the terms of said judgment she gets said five thousand dollars, with interest to the amount of one thousand six hundred and twenty-five dollars and the usufruct as well as the ownership of said real estate. The intervention by the maternal grandfather of the minor in the succession proceedings, for the purpose of requiring that the minor be provided with a tutor agreeable to the law of the State was not only authorized, but *1123 .obligatory. And when, by act of the executrix, the movable effects of the succession in which the minor’s fortone was involved, was left in a position which the law did not contemplate or authorize, it was his duty to take such steps as he considered necessary for its protection. And it is no answer to this proposition to say that the executrix considered the property safe, since it is to be presumed that if the law-maker had so considered the other and different provisions contained in the law for its security would not have been made. That it was the duty of the grandfather to claim the interest due to the minor, and to claim the usufruct of the real estate, there can be no question. And if these different services were rendered'in the discharge of a duty resting upon the grandfather, and that duty could only be discharged by the aid of an attorney, and was so discharged for the benefit and in the interest of the minor, there can be no ground upon which to rest the defence set up in the answer that the minor owes said attorney nothing. The only question is how much the minor owes ? And this question is to be determined by the character of the services, considered in connection with the value of the interest involved.
“ The character of the services has been mentioned, they extented over a period of about eight months, during which there wass carcely a day upon which the plaintiff was not called on to give some portion of his time and attention to the affairs of the defeudant, and there was not a moment during which his mind was relieved of the responsibility which developed upon him. The outcome and net result to the minor of his services is, that instead of having five thousand dollars in cish, and the naked ownership of a piece of real estate, valued at forty-five thousand dollars, but encumbered with a usufruct in favor of another person for a life estimated at thirty years, ¿he gets six thousand six hundred and twenty-five dollars in cash, and the usufruct of said property at once, and from this time forward, free of all encumbrance.”
His conclusion was that the services were valuable to the minor, and that same placed upon her a legal obligation to compensate the plaintiff the quantum meruit value of the services he rendered.
It is quite evident from a casual inspection of the proceedings we have outlined, that the surviving widow and stepmother of the minor resorted to every means in her power to improve her own situation, by increasing the amount of the community at the *1124 expense of the separate estate of the minor; and sought to tax the separate property which was bequeathed to the minor to the extend of thirty-eight thousand dollars, and to enlarge her testamentary usufruct so as to cover it, and by so doing, control and utilize its revenues during her lifetime.
Notwithstanding she adopted the minor by regular judicial proceedings, this was only done after her means of defence were apparently exhausted, which gives rise to the just apprehension that she perceived something in such a course that might be turned to her advantage; and this, we find in her final account, which the grandfather of the minor as undertutor felt bound to oppose, and whose opposition was fruitful of good results to the minor.
On the proof adduced the judge a quo fixed the net income of the minor’s property at two thousand three hundred and fifty dollars, and the widow’s expectation of life at thirty years, basing his estimate upon standard life tables.
In other words, at that rate the minor has a reasonable prospect of realizing from that source alone sixty-seven thousand five hundred dollars, approximately.
On’ that question considerable discussion has been indulged in, with the object of showing the inaccuracy of the judge’s estimate. But, in our opinion, a nice calculation need-not be made, as in this case the question is of the value of the plaintiff’s services, and an approximate valuation of the minor’s property is all that is necessary or useful for that purpose. And based on such valuation, it appears that forty thousand dollars is about the present cash value of the use of the real estate of the minor on which the plaintiff’s fee is to be calculated, independently of the five thousand dollars that is coming to her from her mother’s estate; and to this extent, at least, the minor has been benefited by the litigation which was advised and conducted by the plaintiff.
The amount claimed by the plaintiff was allowed by the judge a quo, in whose court the whole of the litigation was prosecuted; and a careful examination of this case has only served to confirm his conclusions as both just and conscientious, but we think the amount allowed is excessive.
The rule with regard to the allowance of attorneys’ fees in any given case is, in our opinion, very correctly and concisely stated in Breaux, Fenner & Hall vs. Francke, 30 An. 336, in these words, viz.:
*1125 “ Two factors enter into the calculation of fees for services such as those rendered by the plaintiffs. One is the extent and kind of service, and the labor incident to its rendition, and the other is the ability of the party who is liable to pay.”
Much the same rule was stated in Succession of Linton, 31 An. 130, and in Succession of Mager, 12 Rob. 413. It was said that “ the labor of an attorney * * * ought to be rewarded according to its nature, extent and degree of skill and care it demands.”
In a case somewhat similar to this, the court said:
“We do not understand that the compensation of counsel in such case depends upon success, and as the undertutor receives no compensation, and has no direct pecuniary interest in the result, we think he can not be held liable In case of failure, unless, indeed, it appear that he acted in bad faith. * * *
“Upon an examination of the questions properly involved in the pleadings, under the law applicable to such proceedings, the amount of the legal labor required, and the opinion of two district judges before whom the proceedings were conducted, we have come to the conclusion that a fee of one thousand dollars each will be a fair and just reward to the plaintiffs, to be paid by the minor.” Lacey vs. Lanaux, Tutrix, 19 An. 153; Succession of Samuels, 21 An. 15, is to same effect.
In the interdiction of Leech, 45 An. 195, this court adopted the rule for the admeasurement of the fees of counsel which was estab - lished in Breaux, Fenner & Hall vs. Francke, supra, that “ the knowledge of the attorney applied to the suit; his responsibility and labor are criteria of value in fixing his fee; and that a fee for services rendered under the eye of the court, will not be reduced unless manifestly excessive.”
We have examined Cooley vs. Cecile, 8 An. 51; Wailes vs. Succession of Brown, 27 An. 411, and Michon vs. Gravier, 11 An. 596, which are cited in the brief of defendant’s counsel, and find them inapplicable to this.ease. Same is true of Watson vs. Ledoux, 8 An. 68.
Under the facts of this case, as applied to the authorities cited, we are of opinion that the amount claimed is excessive, and that the judgment should be reduced to fifteen hundred dollars.
It is therefore ordered and decreed that the judgment appealed from be reduced to fifteen hundred dollars, and that, as thus amended, the same be affirmed at appellee’s cost.