## LEVIN v. SUFFRIN.*
### No. 16307.

Court of Appeal of Louisiana. Orleans.
May 4, 1936.

Rittenberg & Rittenberg, of New Orleans, for appellant.

Gus Levy, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by an attorney for a fee. There was judgment below as prayed for, and defendant has appealed.

Max Levin was employed by the Golden Gate Liquor Company in the fall of 1934, as an auditor to install a set of books and subsequently to supervise the same on a basis of $50 per month. He was admitted to the bar in March, 1935, and conducted his legal and accounting business from the same office. In the early part of August, 1935, Morris R. Rosen and Herman Suffrin, the defendant herein, both of whom were large stockholders in the Golden Gate Liquor Company, desired to ·sever their business connection and consulted with plaintiff concerning the manner in which the matter might be arranged, calling upon plaintiff at his office a number of times. Whether their object was attained during Levin's connection with the Golden Gate Liquor Company is not clear from the record, but it appears that Levin sent the corporation a bill for $900 for extra services as auditor and rendered a bill to Rosen and Suffrin for $300 (or $150 each) for consultation and 'advice as an attorney. According to the petition, it is alleged that Rosen paid his one-half of the bill, but Rosen testified that he only paid a part of his share. Suffrin declined to pay anything, hence this suit.

The position of the defendant is that he did not consult Levin as an attorney, but as an auditor for the purpose of obtaining information concerning the books of the corporation. He testified that, at the time it is claimed he was seeking legal advice from Mr. Levin, he was represented by his personal attorney, Mr. Rittenberg, with whom he was in communication daily, and that he had no need for two lawyers. Mr. Rittenberg is representing the defendant in this proceeding.

On the other hand, plaintiff asserts that he was very careful to inform Suffrin that his inquiries related to legal matters and that for consultation on legal subjects he expected to receive compensation as an attorney at law. Plaintiff is corroborated in this statement by Rosen who, it appears, is the brother-in-law of plaintiff.

We are referred to a number of authorities to the effect that an attorney may not claim compensation without a contract of employment. This proposition is unquestionably sound, but, of course, the employment may result from an implied as well as an express contract. Corpus Juris, vol. 6, p. 730. It is also true that one who employs an attorney is presumed to contemplate the payment of ˙a fee, and that a fee may be earned whether the attorney is successful in that which he undertakes to do for his client or not, unless there is some agreement to the contrary. Stumpf v. Lopes (La.App.) 154 So. 496; Titche v. Hiller, 5 La.App. 375; Lacey v. Lanaux, 19 La.Ann. 153; Lea v. Hart, 47 La. Ann. 1116, 1125, 17 So. 593; Fenner v. McCan, 49 La.Ann. 600, 21 So. 768.

The alleged subject-matter of the consultations with plaintiff involved the possible dissolution of the corporation, the sale of its stock by Rosen to Suffrin, and vice versa, and other means of severing of the business connection of the two men. Levin stated that his services consisted in explaining appropriate provisions of the Corporation Trading Act, the Bulk Sales Law, the Code of Practice, and the necessary research. We have no doubt that Levin is sincere in his belief that both Rosen and Suffrin were consulting him as an attorney at law, and that he should be paid for his services, but we are convinced that Suffrin did not understand the situation in that way, and that he was confused by the dual character of the plaintiff, as accountant and attorney at law, and did not contemplate plaintiff's employment as attorney or the payment of a fee, particularly in view of the extraordinary services of plaintiff as auditor for which he charged $900. We would not be understood as criticizing plaintiff because of his practicing law and accountancy at the same time and place, for both are very honorable occupations, and we know of no objection to any one pursuing both vocations at the same time. It must be conceded, however, that the possibility of confusion and general misunderstanding was greatly enhanced by the dual occupation and single office of plaintiff. We believe that the expression "a laborer is worthy of his hire" has particular application to lawyers whose labors often exhibit no outward or visible sign of their extent and value. When unappreciative clients refuse to recognize their indebtedness to painstaking and able counsel, there is no reason why they should not be sued to compel substantial acknowledgment of their indebted-

ness to the legal profession. It was not always so, however, for the time was when such suits could not be brought without damage to the reputation of the lawyer litigant.

In the case of Livingston v. Cornell, 2 Mart.(O.S.) 281, decided in 1812, it was said:

"The remuneration of the advocate could not be fixed by any agreement, nor sued for in any ordinary action. Nulla potest definiri conventione, nulla ordinaria actione peti. Ad. Leg. Si quis advocatorum Cod. de postulando. * * *

"Many instances are to be found in the old French law books, of advocates bringing suits for their fees, and recovering on them; but this has long ago fallen into disuse. In the contest, in 1775, between Mr. Linquet and the order of advocates, one of the charges against him was, that he had written to the Duke d'Aiguillon to demand his fees, and threatened him with an action for them; and that his demand upon the Duke had been referred to arbitration. 7 Journal Historique du Retablissement de la Magistrature, 290. * * *

"The fee of a counsellor is a gift of such a nature, that the able client may not neglect to give it without ingratitude. For it is but a gratuity or taking of thankfulness; yet the worthy counsellor may not demand it, without doing wrong to his reputation, according to that moral rule; Multa honeste accipi possunt, quæ tamen peti non possunt. Sir Jno. Davis's preface to his reports, 22, 23."

■ We have come a long way since the conception of lawyers' fees as gifts by grateful clients. Perhaps, the struggle for place and power under modern conditions has dulled the finer sensibilities responsive to moral obligations, or it may be that the modern lawyer requires more of that which "makes the mare go" than his predecessor and insists upon more certain revenues, for individuals, like Republics, are frequently ungrateful. However that may be, lawyers may now sue for their fees with impunity.

But it is of the utmost importance that clients should be under no misunderstanding in their dealings with the profession and more care to insure that result is nec-essary than would be required in an ordinary business transaction.

In Barton v. State Bar of California, 209 Cal. 677, 289 P. 818, 820, it is very truly said: "It is obvious, we think, that the legal profession does stand in a peculiar relation to the public, and that there exists between the members of the profession and those who seek its services a relationship which can in no wise be regarded as analogous to the relationship of a merchant to his customer. For instance, it may be pointed out that, if a customer discovers that one merchant is unworthy of his patronage and trust, he does not thereby brand all merchants as dishonest and unethical, whereas, if a client becomes convinced that the attorney to whom he has intrusted the protection of his interests is unworthy of the trust reposed in him, he is very apt indeed to classify attorneys as a class as unworthy of trust and to feel that they are all scoundrels. For this reason alone it is important to the legal profession as a whole that nothing shall be done by any member which may tend to lessen in any degree the confidence of the public in the fidelity, honesty, and integrity of the profession. And it is by reason of the confidential relationship existing between attorneys and clients that certain rules and regulations are applicable to the profession which are not applicable to a business."

■ As we have pointed out, a client may be obligated to a lawyer by implication and without written or express verbal contract, but the client must realize the situation or conditions be such that no reasonable person could fail to realize that he is engaging the services of a lawyer under circumstances necessarily involving an obligation to pay for them. Such was not the case here, and we are constrained to deny recovery, though the opinion of our learned brother below as expressed by the judgment appealed from was otherwise.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the defendant, Herman Suffrin, dismissing plaintiff's suit at his cost.

Reversed.