**CARLISLE, BROWN & CARLISLE, Attorneys at Law, Petitioning Claimants, Appellants.**

**v.**

**CAROLINA SCENIC STAGES, Respondent, Appellee.**

**In the Matter of CAROLINA SCENIC STAGES, Debtor.**

**No. 7358.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 25, 1957.

Decided March 7, 1957.

Howard Carlisle Bean, Spartanburg, S. C. (Carlisle, Brown & Carlisle, Spartanburg, S. C., on the brief), for appellants.

Thomas A. Wofford, Greenville, S. C. (J. Nat Hamrick, Rutherfordton, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and GILLIAM, District Judge.

GILLIAM, District Judge.

This appeal was taken by petitioners from an order of the District Judge, which disallowed their claim for a fee of $2,500. The claim was filed in a Chapter 10 Proceeding in Bankruptcy, 11 U.S.C.A. § 501 et seq., and, it is alleged, covers services performed while the case was being handled by a State Court Receiver prior to the institution of proceedings in bankruptcy, which services, it is also alleged, benefited all the creditors of the defendant, Carolina Scenic Stages.

■ It should be noted at the outset that the matter was one within the sound judicial discretion of the trial Court and under the cases its decree should not be set aside unless it appears that there was an abuse of that discretion. This Court had the question before it in the somewhat similar case of Jett v. Merchants and Planters Bank, 228 F.2d 156. It is stated in the opinion at page 158:

"This was a matter within the sound judicial discretion of the trial court." And at page 159: "Since we think there was no abuse of discretion on the part of the District Court in proctor's petition for a fee, the decree of the District Court is affirmed."

To properly focus the question of whether the District Court abused its discretion we must look to the course of the litigation which began in a South Carolina State Court, was then transferred to the jurisdiction of the United States Court under a Chapter 11 Proceeding in Bankruptcy, 11 U.S.C.A. § 701 et seq., then returned to the State's jurisdiction, and finally came back to the jurisdiction of the United States Court by way of a Chapter 10 Proceed-

ing in Bankruptcy. This narration of the course of the litigation leading to the filing of the claim for the fee is found in appellants' brief:

"After the Debtor, Carolina Scenic Stages, had been in the custody and control of the Court of Common Pleas of South Carolina, through its duly appointed and acting Receiver for a period of about twenty months, the Debtor without notice filed a petition under Ch. 11, Title 11, U.S.C.A., seeking an arrangement with its creditors and further seeking an order requiring the Receiver of the State Court to turn over to the Debtor the assets held by said Receiver pursuant to orders of the Court of Common Pleas. The petition was filed in the office of the Clerk of the United States District Court for the Western District of South Carolina on May 22, 1953. On the same day, Judge C. C. Wyche approved the petition of the Debtor and, among other things, ordered the State Court Receiver to turn over to the Debtor all of the property of the Debtor without requiring bond for the protection of the creditors.

"Appellants, who represented several of the creditors of Debtor, filed an appeal from the turnover order and moved before Honorable George Bell Timmerman, Judge Wyche having disqualified himself from further action and consideration of the matter, for an order of supersedeas staying the order of Judge Wyche pending an appeal to this Court. The motion was argued May 29, 1953, resulting in an order dated June 4, 1953, dismissing the petition for an order of supersedeas. Prior to the argument on the motion just above referred to, appellants, representing the B. F. Goodrich Company, a creditor of the Debtor, served notice of appeal from the order of Judge Wyche of May 22, 1953, to this Court. Such Notice of Appeal was filed in the office of the Clerk of the United States District Court for the Western District of South Carolina on May 27, 1953.

"Thereafter, on May 27, 1953, the State Court Receiver noticed a motion to vacate the order of May 22, 1953. The motion was heard by Judge Timmerman who overruled it by an order filed May 29, 1953, from which the Receiver appealed in due course.

"Pending the appeal by B. F. Goodrich Company to this Court, appellants moved before the Honorable John J. Parker, Chief Judge of this Court, for an order of supersedeas and stay of proceedings pending the hearing of the appeal. The application for supersedeas was denied conditioned upon a good and sufficient bond in the penal sum of $30,000. being filed by Debtor in the District Court. After the disapproval of the first bond offered on motion of appellants, a second bond of $30,000. cash was filed and approved. Judge Parker also ordered that the appeal of appellants' client and that of the State Court Receiver (from the overruling of the motion to vacate the turnover provisions of the May 22, 1953 order of Judge Wyche) be consolidated and heard together at the October, 1953 term of this Court.

"The appeal was heard October 5, 1953, and resulted in a decision of this Court which held that since the State receivership had been in operation for more than four months, Debtor was precluded from filing a petition under Chapter 11, Title 11, U.S.C.A., Stevens v. Carolina Scenic Stages, 208 F.2d 332, cert[iorari]. den[ied]. 347 U.S. 917, 74 S.Ct. 515 [98 L.Ed. 1072]. Prior to the denial by the Supreme Court of the petition for writ of certiorari, appellants were informed that one of their clients, The B. F. Goodrich Company, had sold and assigned its claim and was no longer interested in the outcome of the liti-

gation. Nevertheless, appellants continued as attorneys of record until the order of the Supreme Court denying certiorari."

Certain other pertinent facts, about which there is no controversy, should be noted. At the time appellants were filing the motions and appeals referred to they were representing The B. F. Goodrich Company and other creditors, who paid them fees in excess of $9,200; the State Court Receiver was effectively prosecuting an identical appeal from the order of May 22, 1953, which order was directed to him, and in connection with such appeal and at the argument before this Court was ably represented by his own counsel who were compensated from the funds of the estate; appellants were never authorized by the Court or other creditors to undertake any action for the benefit of the creditors generally and it seemed up to the time that the petition for a fee was filed appellants were acting in behalf of the creditors by whom they were employed and well paid.

■■ If this fee is allowed it will be paid by those who had not employed appellants, while they have already paid those attorneys employed by them, who without appellants' aid undoubtedly would have achieved the identical result. The general rule, no doubt, is that the right of an attorney at law to collect compensation for his services depends upon the fact of employment; in other words, the creation of the relation of attorney and client by contract, express or implied, is essential to the right of an attorney to compensation. Jett v. Merchants and Planters Bank, above cited. In that case, 228 F.2d at page 159, the Court said: "Proctors were employed by, and acted for, their clients who employed them. The activities of Proctors were directed towards securing the payment of the claims of their own clients. Under such circumstances, where benefits incidentally accrue to others as a result of the proper discharge of counsel's duty to their own client, such services may well be noncompensable." While the cases present exceptions to the general rule, whether the facts in the particular case justify a departure from it should be left to the judicial discretion of the presiding Judge who is familiar with the "ins and outs" of the entire business. The cases cited by appellants only show that there are both real and apparent exceptions to the general rule; they do not go so far as to justify this Court in saying that the trial Judge abused the discretion vested in him. In Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184, one of the cases cited by appellants, the Court said: "In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice." There the Court only said that the trial Judge had the power to make the allowance, not that he should have made it. Here the trial Judge did not rule that he could not allow the fee, he fully considered it and concluded that in fairness and justice to all concerned he should not. It can hardly be maintained, in view of the reasoning set forth in the Judge's order, that there are "dominating reasons of justice" which require this Court to set aside that order.

In the lower Court's order the following findings and conclusions, among others, appear: "The Court cannot sustain claimants position. To do so would require the estate to pay twice for the same legal services, since the receiver was represented by his own attorneys who were paid from the estate * * * If, as claimants contend, their services inured to the benefit of the receiver, then it is equally true that the services of the receiver's attorneys inured to the benefit of claimants' clients * * * Claimants place significance on the fact that prior to the argument of the appeal, claimants' largest client * * * assigned its claim of $50,000. to another creditor and discharged claimants. They say that this fact emphasizes that they were really representing the receiver during the argument of the appeal, since their largest

client no longer had an interest. But their services were nonetheless uninvited in so far as the receiver was concerned. They remained in the case on appeal because they continued to represent other clients who were interested therein and for no other justifiable reason. Moreover, they were paid a fee of $9,200. by Goodrich for their services rendered in the appeal prior to the assignment and more fees of an undisclosed amount from the other clients they represented; these payments accent the fact that any additional fee from the estate would only result in multiple compensation for their services in the appeal." These findings are supported by the evidence and the conclusions are sound.

The opinion of Judge Augustus Hand in In re Paramount Publix Corporation, 2 Cir., 85 F.2d 588, at page 590, though that case arose under a 77B proceeding for reorganization, 11 U.S.C.A., § 207, contains these statements of principles which we think may be appropriately applied here: "Both in proceedings in equity and in bankruptcy simpliciter it is the ordinary rule that attorneys representing creditors * * * must look for compensation to their clients, rather than to the general estate * * * This is because the estate is ordinarily represented by a receiver or trustee whose duty it is to take all steps necessary to protect it * * *." At page 591. "If some other committee or person proposes to seek compensation out of the general assets, there should be an application to the court for recognition, preferably in advance of the rendition of the services for which compensation is to be sought"; At page 592. "Usually it is proper to award compensation to individuals * * only where no one is in the field to protect the interest of the individual or class for which the person or small group speaks, and under all circumstances compensation should be allowed only where services are reasonably required, whether those rendering them be committees or individuals."

We are not convinced that the trial Court abused its discretion in denying the petition, or that its action in doing so was not just and equitable to all concerned under the undisputed facts. The order is affirmed.

Affirmed.