408 P.2d 810

**V. R. CLEMENTS and Reed Clements dba as Co-partners under the firm name and style of Clements & Clements, Plaintiffs-Respondents,**

**v.**

**Willie JUNGERT and William Jungert, Jr., Defendants-Appellants.**

No. 9651.

Supreme Court of Idaho.

Dec. 16, 1965.

Ware, Stellmon & O'Connell, Lewiston, for appellants.

William B. Taylor, Jr., Grangeville, for respondents.

SMITH, Justice.

This is an appeal from a judgment entered on a directed verdict against appellants, allowing recovery to respondents on an implied contract for attorneys fees in the sum of $2,025.00, and expenses incurred of $186.40, totaling $2,211.40 and costs.

This action was brought by respondents to recover the reasonable value of their services rendered and expenses incurred in representing appellants in an earlier action entitled, "Charles Mendenhall and Violet Mendenhall, Plaintiffs, vs. Willie Jungert and William Jungert, Jr., Defendants," Civil Case No. 6069, commenced October 30, 1959, in the Idaho County District Court.

In that action, Mendenhalls alleged that Jungerts threatened Mendenhalls with a rifle, fired the rifle into two of the tires of their truck, and by fire, destroyed a house and furniture which they owned, for which Mendenhalls sought recovery of damages, totaling $6830.00; also sought a decree quieting in them an easement of access travel across Jungerts' land.

At the time of the alleged tortious acts there was in effect comprehensive liability insurance policy No. 65540074 written by Truck Insurance Exchange insuring Jungerts, as a co-partnership engaged in the business of farming, against property damage liability. The policy contained a provision to the effect that the policy coverage did not apply to destruction of property caused intentionally by or at the direction of the insured.[1]

---

1. "Coverage B—Property Damage Liability
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of the use thereof.

$*$ $*$ $*$ $*$ $*$
"This policy does not apply:
$*$ $*$ $*$ $*$ $*$
"(c) to injury $*$ $*$ $*$ or destruction caused intentionally by or at the direction of the insured; $*$ $*$ $*$ "

Jungerts took the Mendenhall complaint and summons, and the insurance policy, to a Mr. Seubert, an agent for Farmers Insurance Group (of which Truck Insurance Exchange is a member) at Cottonwood, in Idaho County, for the purpose of ascertaining if the policy covered their legal liability in the Mendenhall action. Jungerts, at the agent's suggestion, consulted with respondent V. R. Clements at his office in Lewiston; this was on November 3, 1959. Mr. Clements stated that he did not know whether the Jungerts were covered by the policy, and that he would have to get a decision from Loy Grimes, the Farmers Insurance Group adjuster in that area.

A second conference was held November 6, 1959. Willie Jungert and his wife, Mr. Grimes and Mr. Clements were present. The testimony is in conflict as to whether Mr. Jungert asked Mr. Clements to represent him, and whether Mr. Grimes stated that the Jungerts were covered by the policy.

Following these two conferences Mr. Clements proceeded with his preparation of the defense of the Mendenhall action. He interviewed witnesses, gathered information, and held several conferences with Willie Jungert.

One such conference held on December 21, 1959, involved a letter dated December 17, 1959, which Willie Jungert had received, in which the insurance company through its Spokane, Washington, Branch Manager stated that it had reviewed the Mendenhall complaint; that the policy did not cover claims arising out of damage to property caused by the intentional acts of the insured, for which reason the company denied liability, including any defense to Jungerts of the Mendenhall action. Mr. Clements at that time told Mr. Jungert that he, Clements, would not handle any dealings with the insurance company relating to its refusal of coverage of the Mendenhall claim and suggested that Mr. Jungert consult with Mr. Eimers, an attorney in Grangeville. Thereafter the insurance company sent two letters, one dated February 9, and the other March 3, 1960, to Mr. Eimers denying liability, again on the theory that the Mendenhall complaint disclosed intentional acts on the part of Jungerts not covered by the insurance contract. Jungerts received a copy of each such letter shortly after its date.

During March 1960, Mr. Clements represented Jungerts on a motion by Mendenhalls that they be accorded the right of ingress and egress over Jungerts' land. After a hearing had, at which oral and documentary evidence was introduced, the court denied the motion. Mr. Clements also represented Jungerts, although unsuccessfully, in negotiations for the purchase by Jungerts of adjacent land owned by Mendenhalls.

Mr. Clements prepared an answer in which Jungerts denied the material allegations of the Mendenhall complaint except that William Jungert, Jr., fired a rifle into

the rear tires of Mendenhalls' truck allegedly being operated unlawfully upon Jungerts' land; also Jungerts counterclaimed for $3,342.00 damages allegedly caused by Mendenhall in the operation of his truck over and across Jungerts' land, which Mendenhall denied.

The Mendenhall action went to trial before the court sitting without a jury on May 2, 1960, and was continued and concluded on June 21, 1960. The court found that on October 29, 1959, Mendenhall did not have an easement over Jungerts' land and was without right thereon. That on such date William Jungert, Jr., fired rifle bullets into the rear tires of a truck then being operated by Mendenhall, to the latter's damage in the sums of $50.00 for repair and replacement of the tires, and $1,000 for assault with a deadly weapon. The court found against Mendenhalls as to all other elements of damage alleged in their complaint; also found against Jungerts on their counterclaim. The court entered judgment for damages accordingly in favor of Mendenhalls against Jungerts but decreed that Mendenhalls had no right in and to Jungerts' land by easement, to travel over and across the same.

On July 29, 1960, upon learning the contents of the judgment, Jungerts consulted with Mr. Clements. Willie Jungert indicated dissatisfaction with the outcome of the case and expressed himself to the effect that Mr. Clements was influenced by the insurance company. Mr. Clements thereupon suggested that should they appeal the case, they employ another lawyer.

Respondents billed Jungerts as of August 30, 1960; Willie Jungert conferred with Mr. V. R. Clements on September 9, 1960, at which time he discussed the matter of taking an appeal. No discussion was had relating to the billing. On September 28, 1960, Willie Jungert left a check in Mr. Clements' office for payment of the judgment.

Respondents again billed Jungerts on October 6, 1960. Willie Jungert responded by letter dated November 9, 1960, in which he stated, "As far as I am concerned, you handled this matter as attorney for the insurance company," and suggested that respondents direct their billing to the company. Respondents thereupon commenced the present action seeking to collect their attorneys fees and expenses incurred in defending the Mendenhall action.

Appellants brought in Truck Insurance Exchange as cross-defendant on the theory that under its policy insuring Jungerts, it was obligated to provide a defense to Jungerts in the Mendenhall action. In its answer the company advanced the affirmative defense that while under its insuring agreement it was obligated to pay sums which the insured shall become legally obligated to pay as damages to or destruction of property, nevertheless the policy did not cover

injury to or destruction of property caused intentionally by or at the direction of the insured; that Mendenhalls sought to recover damages allegedly caused by wilful and intentional destruction of their property by Jungerts, the insureds, and that therefore the company was not obligated to provide either a defense, or settlement of any claim or judgment recovered in the Mendenhall action. The issues as between appellants and the insurance company were incorporated in the pre-trial order dated November 20, 1964.

On November 20, 1964, the trial court entered an order wherein it recited that there was no issue between respondents and Truck Insurance Exchange, but that there existed legal and equitable issues between Jungerts and the insurance company; thus, "in furtherance of convenience and to avoid prejudice," the court ordered, "that the trial of the issues between * * * cross-plaintiffs (crossclaimants) Willie Jungert and William Jungert, Jr., and the cross-defendant ·Truck Insurance Exchange, as raised by the cross-complaint (crossclaim) of said Jungerts, and the answer of the cross-defendant thereto and the pre-trial order now on file herein, be had separately from, and subsequent to, the trial of the issues between plaintiffs [respondents] and the defendants [appellants] as raised by the Complaint and Answer thereto, and the pre-trial order now on file herein, * * *" The court then ordered that the trial of the issues between Jungerts and the insurance company be at the next ensuing term of court.

Trial of the issues as between respondents and appellants was had before a jury. At the close of the evidence respondents, pursuant to I.R.C.P. 50(a), moved for a directed verdict which the trial court granted. The jury thereupon returned a verdict in favor of respondents, and the court ordered judgment thereon against appellants, in the sum of $2211.40. Appellants perfected this appeal from the judgment.

The trial court granted respondents' motion for a directed verdict on the following grounds:

That there need be no express contract, but there may be an implied contract, for the rendition of services by an attorney, as between the attorney and the client, which carries with it the obligation to pay;

That appellants continued on with respondents, in the relationship of client and attorney after the surety had notified appellants that they were not covered by the policy of insurance;

That appellants received the benefit of the services performed on their behalf by respondent attorneys;

That there is no evidence to show, or from which to infer, that the surety

·ever hired Mr. Clements in this particular case;

That there are no facts to support an estoppel of respondents to recover from appellants because of conflicting interests as between appellants, respondents and the surety;

That appellants' rights as against the insurance company are preserved.

 Whether the court erred, as appellants assert, in granting the motion depends upon whether the record presents a disputed issue of fact as to the existence of the attorney-client relationship between appellants and respondents in the Mendenhall action.

" 'The motion for a directed verdict admits the truth of all the evidence in favor of the defendants and every inference of fact that may legitimately be drawn therefrom (Moody v. Morris-Roberts Co., 38 Idaho 414, 226 P. 278), and should have been denied unless there was no evidence material to the defense on any question of fact about which reasonable minds might differ, which, if found in favor of the defendants would have supported a verdict for them.' " Conklin v. Peterson, 85 Idaho 331, at 336, 379 P.2d 428, at 430 (1963).

See also Pigg v. Brockman, 85 Idaho 492, 381 P.2d 286 (1963); Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146 (1961).

Appellants assign error of the trial court in sustaining an objection to appellants' offer of proof by Loy Grimes, resident claims representative of Farmers Insurance Group in the Lewiston area during the year 1959. The offer of proof was to the effect that when the time for appearance in the Mendenhall case was about to expire, Willie Jungert indicated that it was necessary for him to employ his own attorney, whereupon Mr. Grimes said to Mr. Jungert, "If you hire your own attorney, you will have to pay for him. I don't think it is necessary because our—because the insurance company's attorney will protect your interests in the matter. If you do not hear from me within a period of two days, you will know that the insurance company is going to provide your defense and your attorney in this matter." The court rejected this offer of proof as hearsay on the ground that no proper foundation had been laid to show that Mr. Grimes was "an authority for the company," or that he had authority to hire counsel, or by that method that the insurance company hired Mr. Clements.

 An agent can bind his principal by acts within the scope of his apparent authority. Anderson v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 494, 365 P.2d 965 (1961); Hunsaker v. Rhodenhouse, 77 Idaho 119, 289 P.2d 319 (1955); Clark v. Tarr,

75 Idaho 251, 270 P.2d 1016 (1954); Arens v. Scheele, 63 Idaho 189, 119 P.2d 261 (1941). Where a principal, by voluntary act, has placed an agent in such a situation that a person of ordinary prudence, conversant with the business usages and the nature of the particular business, is justified in believing that the agent has such authority and deals with the agent under that assumption, the principal is estopped as against the third person from denying the agent's authority. Anderson v. Smith Frozen Foods of Idaho, Inc., supra; John Scowcroft & Sons Co. v. Roselle, 77 Idaho 142, 289 P.2d 621, 55 A.L.R.2d 1 (1955). But apparent authority cannot be created by the acts and statements of the agent alone. Brunette v. Idaho Veneer Company, 86 Idaho 193, 384 P.2d 233 (1963); Smith-Perry Electric Company v. Transport Clearings, 243 F.2d 819 (5th Cir. 1957); Logsdon v. Main-Nottingham Investment Company, 103 Ohio App. 233, 141 N.E.2d 216 (1956); American Nat. Bank of Sapulpa, Okl. v. Bartlett, 40 F.2d 21 (10th Cir. 1930); 3 Am.Jur.2d Agency § 74.

The evidence shows that Mr. Grimes was contacted for the purpose of making a determination as to whether the Jungerts were covered by the policy; also, that he made an investigation into the facts surrounding the incident between the Jungerts and the Mendenhalls. There is no evidence to show that Grimes was a general agent for the insurance company, or that he could hire attorneys for the company, or bind the company in any manner concerning the hiring of legal counsel for policy holders.

Moreover the record shows that Mendenhalls filed their complaint October 30, 1959, and that in the interim between the time of filing the complaint and about December 20, 1959, when Willie Jungert received the insurance company's letter of December 17, 1959, of denial of liability, Mr. Clements made an appearance only, by motion to dismiss filed November 19, 1959, on behalf of Jungerts. It was after December 20, 1959, when Jungerts had actual knowledge of the company's denial of liability that Mr. Clements filed an answer and cross-complaint, February 5, 1960, and thereafter contested Mendenhalls' motion for the right of ingress and egress over Jungerts' land; also attempted negotiations for the purchase of a portion of Mendenhalls' land; prepared for and attended the trial May 2 and June 21, 1960; obtained a release of the judgment, and in all other aspects represented Jungerts in the Mendenhall action.

■ The trial court properly rejected the offer of proof.

■ The general rule is that an attorney's claim for compensation for professional services must rest upon a contract of employment, express or implied, made with the person sought to be charged. Thomas v. Lewman, 190 Okl. 37, 120 P.2d

341 (1941); Becht v. Miller, 279 Mich. 629, 273 N.W. 294 (1937); Levin v. Suffrin, 167 So. 911 (La.App.1936); Rankin v. Superior Automobile Ins. Co. of Florence, 237 S.C. 380, 117 S.E.2d 525 (1960); Carlisle, Brown & Carlisle v. Carolina Scenic Stage, 242 F.2d 259 (4th Cir. 1957).

■ An implied contract is one, the existence and terms of which are manifested by the conduct of the parties, with the request of one party, and performance by the other party often being inferred from the circumstances attending the performance. Beatrice Foods Co. v. Gallagher, 47 Ill. App.2d 9, 197 N.E.2d 274 (1964); Tustin Elevator & Lumber Company v. Ryno, 373 Mich. 322, 129 N.W.2d 409 (1964); City of Pasadena v. Los Angeles County, 118 Cal.App.2d 497, 258 P.2d 28 (1953); In re Langdon's Estate, 165 Kan. 267, 195 P.2d 317 (1948).

■ We again point out that appellants were notified three times, by the letters of December 17, 1959, February 9, and March 3, 1960, by the insurance company of its denial of liability, including denial of any defense under the policy, of the Mendenhall claim. Even with this knowledge, appellants continued the services of respondents, and respondents fully performed those services on behalf of appellants. Noteworthy, respondents performed practically all of those services after appellants received the company's first letter of denial of liability. Moreover the record shows that appellants were fully informed of respondents' relationship to the insurance company, i. e., that they were not its retained counsel. The uncontroverted evidence in the premises is sufficient to imply from appellants' conduct a request for performance of the services by respondents and a promise on appellants' part to pay for the same.

The case at bar is readily distinguishable from Felton v. Finley, 69 Idaho 381, 209 P.2d 899 (1949), relied upon by appellants. In the Felton case, the attorney performed the services with knowledge that the parties benefited did not want, and had refused his services. Moreover, the parties therein sought to be charged opposed the action and did not take any part therein, whereas the facts in the case at bar show that appellants knew that the insurance company had denied all liability under the policy for the Mendenhall claim and for its defense. Nevertheless, appellants willingly proceeded with respondents, at no time requested the termination of respondents' services, and received the benefit of those services.

■ assert they received no benefits from the services rendered by respondents. The general rule is an attorney may recover for services rendered although the client may receive little or no benefit therefrom. In re McCarthy, Sup., 106 N. Y.S.2d 844 (1951), modified 279 App.Div. 716, 108 N.Y.S.2d 439 (1951), aff'd 304

N.Y. 601, 107 N.E.2d 88 (1952); Levin v. Suffrin, supra; Shouse, Doolittle & Morelock v. Consol. Flour Mills Co., 132 Kan. 108, 294 P. 657 (1931); Cullinan v. McColgan, 87 Cal.App. 684, 263 P. 353 (1928). The record does not bear out appellants' contention.

Mendenhalls in their complaint alleged and sought judgment against appellants for damages of $5,000 for assault with a deadly weapon, $230 for destruction of the truck tires, $1,000 for the destruction of a house, $500 for destruction of the furniture in the house, and $100 as replacement expense of the tires and reacquisition of the truck, all totaling $6,830 and costs. Mendenhalls also sought to quiet title to an easement across appellants' land.

 The record shows that respondents were successful in defeating Mendenhalls' asserted easement across appellants' land; also in defeating all of Mendenhalls' claims for damages except $1,000 assessed as a penalty against appellants for assault with a deadly weapon and $50 for replacing the truck tires, totaling $1050. Clearly appellants received material benefit from the services rendered by respondents.

Appellants assert that the evidence is sufficient to estop respondents from collecting their attorneys fee, for the reason that Mr. Clements represented adverse interests.

 The general rule is that an attorney cannot represent conflicting interests of his clients. American-Can. Oil & D. Corp. v. Aldridge & Stroud, Inc., 237 Ark. 407, 373 S.W.2d 148 (1963); Suttle v. Chadwell, 196 Okl. 298, 164 P.2d 880 (1945); Silbiger v. Prudence Bonds Corporation, 180 F.2d 917 (2nd Cir. 1950), cert. denied 340 U.S. 813, 71 S.Ct. 40, 95 L.Ed. 597 and 340 U.S. 831, 71 S.Ct. 37, 95 L.Ed. 610 (1951).

 recognize the general rule to be that it is unprofessional for an attorney to represent conflicting interests, except by the express consent of all concerned given after a full disclosure of the facts. Canon 6 of the Canons of Professional Ethics adopted by the American Bar Association and by this Court; Acorn Printing Company v. Brown, 385 S.W.2d 812 (Mo.App. 1964); State ex rel. Nebraska State Bar Ass'n. v. Nelson, 147 Neb. 131, 22 N.W.2d 425 (1946); Arden v. State Bar of California, 52 Cal.2d 310, 341 P.2d 6 (1959); State v. Leigh, 178 Kan. 549, 289 P.2d 774 (1955); Butler Bros. Development Co. v. Butler, 111 Mont. 329, 108 P.2d 1041 (1941).

In the case at bar, however, we cannot discern wherein respondents represented interests adverse to those of appellants. Simply stated, the record shows that Mr. Clements was not the insurance company's retained counsel, but that on various occasions he acted as counsel for the company, being compensated for the particular services rendered. Nor does the record disclose any competent evidence in anywise tending to indicate that the insurance company em-

ployed respondents, or sought to engage their services in the Mendenhall action.

 The mere fact that respondents may have represented the insurance company in referred cases prior to the time the Mendenhall action arose, in nowise tends to establish any conflict in interest, which would present any sufficient reason why respondents should not represent appellants in the Mendenhall litigation. Finch v. Wallberg Dredging Company, 79 Idaho 521, 322 P.2d 701, Annot. 126 A.L.R. 1273 (1958). See also 7 C.J.S. Attorney and Client § 48.

"The test of inconsistency in cases of the character under consideration is not whether the attorney has ever appeared for the party against whom he proposes to appear, but whether his accepting the new retainer will require him, in forwarding the interests of his new client, to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and whether he will be called upon, in his new relation, to use against his former client any knowledge or information acquired through their former connection." 7 C.J.S. Attorney and Client § 48.

See also Sidney Smith, Inc., v. Steinberg, 316 S.W.2d 243 (Mo.App.1958); Butler Bros. Development Co. v. Butler, supra; Skillman v. McDowell, 317 Ill.App. 85, 45 N.E.2d 574 (1942); Wutchumna Water Co. v. Bailey, 216 Cal. 564, 15 P.2d 505 (1932).

Tested in the light of the foregoing rule, the evidence is insufficient to support appellants' contention that respondents represented interests conflicting to those of appellants.

The judgment is affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, TAYLOR and KNUDSON, JJ., concur.