Saul JECIES, Plaintiff,

v.

Mitsuo MATSUDA, Kenishi Kuemasa, Wako Matsuda, Mikiya Igarashi and Fuji Office, Law Patent and Account, Defendants.

No. 79 Civ. 3188 (CBM).

United States District Court,
S. D. New York.

Aug. 6, 1980.

Saul Jecies, pro se.

Mitsuo Matsuda, Tokyo, Japan, of counsel, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff Saul Jecies has moved for summary judgment in this action for breach of contract and quantum meruit against the defendant Fuji Office, Law, Patent and Account ("Fuji Office") and the members of the alleged Fuji Office partnership: Mitsuo Matsuda; Kenichi Suemasa, Wako Matsuda, and Mikiya Igarashi. Plaintiff, a resi-

dent of New York, is an attorney and counselor-at-law in good standing and duly admitted to the practice of law in the State of New York. Plaintiff is also admitted to practice before the Patent and Trademark Office of the United States. He has his office for the practice of law in the City and County of New York. The individual defendants are not citizens of the United States. Fuji Office is not organized under the laws of the United States of America. Thus, this is an action between a citizen of a State and the citizens of a Foreign State. As this action is for an amount greater than $10,000, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

■ The individual defendants are neither present in this state, nor do they reside in the state. Defendant Fuji Office was not organized in the state nor does it have an office in the state. Nevertheless, all of the defendants are subject to the jurisdiction of this Court. The jurisdiction of a federal court over the person of any defendant in a diversity action involves questions of both state and federal law. Thus, defendant must be subject to service of process under the state law of the forum, a question of state law; moreover, the exercise of such jurisdiction must be consistent with due process, a question of federal law. *Intermeat, Inc. v. American Poultry Inc.*, 575 F.2d 1017 (2d Cir. 1978); *Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963); *Transatlantic Cement Inc. v. Lambert Freres et Cie*, 448 F.Supp. 816 (S.D.N.Y.1978). In order to subject a defendant to a judgment in personam, he must first be subject to service of process under the laws of New York. In the instant case, defendants have, on a number of occasions, retained the plaintiff to provide them with opinions concerning the patent law in the United States. Furthermore, this cause of action arises out of defendant's last such request. The test is whether the defendants have engaged in some purposeful activity in New York in connection with the matter in suit. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied*, 382 U.S. 905,

86 S.Ct. 241, 15 L.Ed.2d 158 (1966); *Elman v. Belson*, 32 A.D.2d 422, 302 N.Y.S.2d 961 (2d Dept. 1969). "The retainer by defendants of plaintiff for the purpose of legal representation in this state is a purposeful transaction of business within this state and the non-domiciliary defendants are thusly subject to the jurisdiction of this court by service without the state pursuant to Sections 302(a)(1) and 313 of the CPLR." *Mayer v. Goldhaber*, 63 Misc.2d 605, 313 N.Y. S.2d 87 (Sp.Ct.N.Y.Cnty.1969). Secondly, under the federal law of due process, if the defendant is not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington Office of Employment Compensation and Placement*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Since the cause of action arose out of the alleged retainer of plaintiff by defendants at Jecies' New York law office, it does not seem unfair or improper to subject defendants to the jurisdiction of this court, forcing them to defend the suit here.

The gist of Jecies' complaint is that defendants had retained him to provide them with a legal opinion on a novel and complex patent case, which they failed to pay him for when they were provided with the opinion. In addition to denying the court's jurisdiction over their person, the defendants aver that: (1) the offer for a contract was never properly accepted; (2) there was no reasonable performance; (3) the requested fee was "extraordinary . . . not on normal common sense lines"; and (4) that Mitsuo Matsuda signed all the correspondence in his private capacity and that therefore the other defendants are not proper parties to this action.

Plaintiff has moved for an order of summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Accompanying his motion, Jecies has submitted a brief affidavit and eight letter exhibits detailing a prior transaction between the parties as well as the one giving rise to his

present cause of action. Defendants have failed to respond to plaintiff's motion. However, the plaintiff has not met his burden of affirmatively establishing the absence of any meaningful factual issue. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, the motion for summary judgment is denied.

It is well settled that the moving party in a summary judgment motion has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material if lodged must be viewed in the light most favorable to the opposing party. *First National Bank of Cincinnati v. Pepper*, 454 F.2d 626 (2d Cir. 1972). However, in the absence of opposing affidavits by the defendants, the material factual allegations contained in plaintiff's affidavit are deemed to be admitted and accepted as true. *Apollo Distributing Company v. Apollo Imports Inc.*, 341 F.Supp. 455, 456 (S.D.N.Y.1972).

This is not to say, however, that in every case the adverse party is penalized by an adverse default judgment for not filing an opposing affidavit. *Robinson v. Diamond Housing Corporation*, 463 F.2d 853, 861–62 n. 12 (D.C.Cir.1972); *Subin v. Goldsmith*, 224 F.2d 753, 759 (2d Cir. 1955), *cert. denied*, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779. The denial of summary judgment involves not only pure questions of law, but involves as well an exercise of discretion by the court upon the question of whether final decision should be postponed until it can be founded on a more complete factual record. *Virgil v. Time, Inc.*, 527 F.2d 1122 (9th Cir.), *cert. denied*, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1975); *Perma Research & Development Company v. Singer Company*, 308 F.Supp. 743 (S.D.N.Y.1970).

In the case at hand, the court chooses to deny plaintiff's motion in view of the rather peculiar facts alleged. This court is guided by its prior statement in *Boston & Maine Railroad v. Lehigh & New England R. Co.*, 188 F.Supp. 486, 490 (S.D.N.Y.1960); *appeal dismissed*, 287 F.2d 678 (2d Cir. 1961):

"[T]his case presents a basic issue of fact as to whether these parties ever manifested a mutual assent .... In large measure, this depends on the manifested intentions of the parties as it may be gleaned from their conduct and relevant circumstances surrounding their treatment of the accounts, including the separate or related nature of the underlying transactions.... These relevant circumstances are not shown in the papers before the court, and there are simply too many gaps in the proof to reach any definitive conclusion on the question of the parties' intention ...".

In the case at hand, plaintiff Jecies has not established a sufficiently complete record upon which summary judgment can be granted. The party opposing summary judgment does not have the burden of showing that there is a genuine issue for trial until the movant has offered affidavits showing that there is no genuine issue as to any material fact and that he is entitled to summary judgment as a matter of law. *2361 State Corp. v. Sealy, Inc.*, 402 F.2d 370, 375 (7th Cir. 1968). When the movant's affidavits do not show that the non-moving party's position is a sham or fails to foreclose the possibility of a factual dispute, then the party opposing the motion has no burden at all. *Bromley-Heath Modernization Comm. v. Boston Housing Authority*, 459 F.2d 1067 (1st Cir. 1972); *Brunswick Corp. v. Vineberg*, 370 F.2d 605 (5th Cir. 1967); *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955 (N.D.Ill.1972). Facts not conclusively demonstrated, but essential to the movant's claim, are not established merely by his opponent's silence; rather, the movant must shoulder the burden of showing affirmatively the absence of any meaningful factual issue. *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 157, 90 S.Ct. at 1608, 26 L.Ed. at 154; *National Assn. of Gov't Emp. v. Campbell*, 593 F.2d 1023, 1027 (D.C.Cir.1978).

This is a breach of contract action involving alleged agreements for the performance of legal services in New York. As a general rule, a contract of some na-

ture, either expressed or implied in fact, is essential to the right of the attorney to recover for his services. *See generally Clements v. Jungert,* 90 Idaho 143, 408 P.2d 810 (1965); *Rankin v. Superior Automobile Ins. Co. of Florence,* 237 S.C. 380, 117 S.E.2d 525 (1960); *Carlisle, Brown & Carlisle v. Carolina Scenic Stage,* 242 F.2d 259 (4th Cir. 1957); *Lynn v. Agnew,* 179 App.Div. 305, 166 N.Y.S. 274 (4th Dept. 1917). However, no particular formalities are necessary for the formation of this relationship, as the parties by their conduct, in the absence of an express agreement, may imply a promise to pay on the part of the client for service and counsel pertaining to problems within the scope of the attorney's professional employment. *Lawrence v. Tschirgi,* 244 Iowa 386, 57 N.W.2d 46 (1953); *Prigmore v. Hardware Mutual Ins. Co. of Minnesota,* 225 S.W.2d 897 (Tex.Civ.App.1979); *Nicholson v. Shockey,* 192 Va. 270, 64 S.E.2d 813 (1951). Moreover, the general rule is that once such a contract is established, an attorney may recover for services rendered although the client may receive little or no benefit therefrom. *Clements v. Jungert, supra,* 408 P.2d at 816; *In Re McCarthy,* 106 N.Y.S.2d 844 (Sup.), *modified,* 279 App. Div. 716, 108 N.Y.S.2d 439 (1951), *affirmed,* 304 N.Y. 601, 107 N.E.2d 88 (1952).

In the instant case, the alleged contract was created and established through a series of letters between the parties. These letters must, of course, be viewed in the context of a prior course of dealings between the parties dating from 1966. The first letter in the record is dated March 21, 1972 and is signed by defendant Mitsuo Matsuda. In this letter, the defendant requests plaintiff to provide him with an opinion on several items concerning patent law. However, the letter expressly warns: "Previous to the formal proposal to you for making your opinions on the said matter, we want your prompt reply with regard to the maximum expenses necessary therefor and which should bear in our mind." The next letter is dated January 23, 1975. It asks for a rough estimate of the expenses which would be necessary for a suit declaring a certain patent invalid. These are the only letters included in the record which do not pertain directly to the alleged contract presently in issue.

Presumably, plaintiff argues that the letter dated February 2, 1978 establishes the basis for the present cause of action. In the February 2 letter, defendant Mitsuo Matsuda requests plaintiff to inform him of the established judicial precedents and theories on double trademark registration and double patenting in the United States. Additionally, Matsuda asks plaintiff to send him publications and literature which would be helpful to study the theories involved. He also mentions that he would appreciate plaintiff's advice in this regard. The last line of the letter reads: "Please send me your debit note for your services in this matter when you reply to this letter."

In response to the above letter, Jecies sent a letter which states, in part:

"It appears from the context of your letter that what you, in fact, mean is that I render an opinion about the relative rights of two independent inventors where the older invention dominates or in part claims the same invention as claimed in the later patent application . . .

"In other words, are your clients interested in the determination of the relative rights of independent inventors and/or proprietors of trademarks as to their relative exclusive rights? . . .

"I will proceed with your request, but would appreciate your comments and observations on the questions above."

On March 3, 1978 the defendant replied:

"What I want to know is those matters that you wrote in the third and fifth paragraphs on page 1 of your above letter [the first two of the three above reprinted paragraphs of the February 10, 1978 letter], and please note the following:

"I want to know this: in case two similar trademarks which are filed with the Patent and Trademark Office on different days by different applicants are both registered by error of the Office, what decision would your court make, and what Judgement (sic) would your theory make on this matter? . . . And I

wish to know theories that support the decision you take."

"I look forward to hearing from you at your earliest convenience."

Plaintiff, more than nine months later, in a letter dated December 11, 1978, responded "My opinion in the form of an article is mailed to you separately. You will find it voluminous enough." Additionally, plaintiff finally sent the debit note for his services that defendant anticipated in his letter of February 2, 1978. Plaintiff's bill was in the amount of eighty-nine thousand dollars ($89,000.00); but only if paid within four weeks of the date of the bill would plaintiff accept this "reduced fee." Plaintiff alleges the true value of his services rendered are one hundred and ninety thousand dollars ($190,000.00). Matsuda indicated in his last letter which returned the manuscript that this amount was unanticipated.

The critical issue before the court is whether plaintiff has established, as a matter of law, that there was a contract between the parties which plaintiff performed—or whether the defendants were unjustly enriched by a benefit from plaintiff's services.

Generally, where a person requests another to perform a service, and that person performs the service, the law implies a promise by the requesting party to pay the reasonable value of the service. *McGuire v. Hughes*, 207 N.Y. 516, 101 N.E. 460 (1913); *Clark v. Ulster & Delaware R. R. Co.*, 189 N.Y. 93, 81 N.E. 766 (1907); *Crane v. Ganung*, 89 App.Div. 398, 85 N.Y.S. 975 (1903). Matsuda's letter of February 2, 1978 is without question a request for services. He requests literature on precedents and theories concerning double trademark and patenting, as well as requesting some advice. This is to be construed as an offer. It is not entirely clear whether this offer anticipates Jecies' acceptance of the offer to be accomplished by immediate performance or by a promissory acceptance and later performance. Matsuda's offer seems to contemplate immediate performance as the proper mode of accepting the offer which would indicate an offer for a unilateral contract. *Restatement of Contracts*, § 12 provides "A unilateral contract is one in which no promissor receives a promise as consideration for his promise." *Peterson v. Pattberg*, 248 N.Y. 86, 161 N.E. 428 (1928). Matsuda does explicitly request a debit note from Jecies for his services when he responds to the offer. This would seem to indicate the expectation of immediate performance.

Jecies, in his response of February 10, 1978, explains that the accepted meaning of "double patenting" means something quite different from what Matsuda was apparently referring to. Plaintiff further states in that letter: "I will proceed with your request, but would appreciate your comments and observations on the questions raised above." This is not an acceptance, as plaintiff suggests that he is not quite sure, as yet, what exactly the offer anticipates. More importantly, it should be noted that plaintiff did not provide the debit note as required by the offer. In fact, the letters proffered by plaintiff indicate a prior course of dealings between the parties. This prior course of conduct as indicated in the letters was that if immediate performance is not anticipated, then an estimate of expenses was expected. As of this point, there was no contract.

In Matsuda's letter of March 3, 1978, he asked, "I want to know this . . . what decision would your court make, and what Judgement (sic) would your theory make on this matter?" It can safely be assumed that the offer was still open at this point. But it is still not clear whether the offer still contemplated an acceptance by performance or a return performance.

Plaintiff has not presented a record which indicates whether performance more than nine months after the offer was a reasonable acceptance, whether the offer was to be construed as one a unilateral contract, or whether it was reasonable performance if plaintiff's letter of February 10, 1978 is to be construed as a proper acceptance. Therefore, plaintiff has not met his burden of establishing in his affidavit that he has completed performance under a contract. There must be either an express or implied contract of employment in order to recover for services in *quantum*

*meruit, McKeon v. Van Slyck*, 223 N.Y. 392, 398, 119 N.E. 851 (1918), or at least a benefit from the services shown. *Minuth v. Barnwell*, 106 App.Div. 437, 94 N.Y.S. 649 (1st Dept. 1905). Here, plaintiff has established no benefit to the defendants. Jecies has entered into the record defendant Matsuda's letter of December 20, 1978 indicating Matsuda's rejection of Jecies' performance and is accepted as evidence of the legal act of non-acceptance.

There is substantial ambiguity in the record as to the factual basis of the contract, if one existed. The record is also insufficient to show that plaintiff properly performed his obligations under the alleged contract. Plaintiff has not indicated whether there were, in addition to the letters of record, other letters of communications between the parties which would assist the court in properly determining the issues. What is clear is that defendant Matsuda has requested plaintiff to supply an estimated bill for his services in advance of doing a substantial amount of work. Despite Matsuda's request, plaintiff did not submit such a bill. A not unreasonable inference would be that defendants expected plaintiff's services to be limited to minor research and copying costs, and would have expected explicit notification of anything more substantial.

Even assuming, arguendo, that defendant Mitsua Matsuda is liable to plaintiff, plaintiff has suggested nothing in his affidavit which would indicate that any of the defendants, other than Mitsua Matsuda, are liable to him. Besides the letterhead on Matsuda's stationery, there is no indication in the record that a partnership among the individual defendants existed or that all defendants should be held liable as if one did exist. There is also no evidence that the other defendants had any knowledge of Matsuda using the letterhead. Thus, there is insufficient evidence to foreclose the issue as to the other defendant's liability for Mitsua Matsuda's acts.

■ It is plaintiff's burden to show that there is no genuine issues of fact and that he is entitled to summary judgment as a matter of law. Since he has failed to meet that burden, defendants had no burden at all, and had no obligation to answer the motion. *2361 State Corp. v. Sealy, Inc., supra*, 402 F.2d at 375. Any disposition of the case at this time without a more solid foundation as to the underlying facts, would rest on quicksand.

■ Finally, plaintiff has failed to adhere to the requirements of Rule 9(g) of the local rules of this Court, which provides in pertinent part: "Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." On the present motion this unexplained oversight on the part of plaintiff alone may furnish a ground for a decision in favor of defendants. *See generally Securities Exchange Commission v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978).

For the reasons stated above, plaintiff's motion for summary judgment is denied as to all substantive issues. The court does find, however, that it has subject matter jurisdiction as well as personal jurisdiction over all the defendants.

So ordered.