612 P.2d 137

C. E. FOUSER and Iris M. Fouser, husband and wife, Cross-Claimants and Third-Party Plaintiffs and Appellants,

v.

Leon D. PAIGE and Jane Doe Paige, husband and wife; Shirley Helen Paige Booth and John D. Booth, husband and wife; Grange Mutual Life Co., Cross-Defendants.

Leon D. PAIGE and Jane Doe Paige, husband and wife, Cross-Defendants and Respondents,

v.

BRANDT AGENCY, Idaho Abstract & Title Company, Third-Party Defendants.

No. 12939.

Supreme Court of Idaho.

June 4, 1980.

Dennis J. Sallaz of Sallaz, Scanlan, Beer & Cain, Boise, for C. E. and Iris M. Fouser.

James W. Givens, Lewiston, for Leon D. and Jane Doe Paige.

McFADDEN, Justice.

This is an appeal by C. E. Fouser and Iris M. Fouser (defendants, cross-claimants and third-party plaintiffs in the action below) from an involuntary dismissal pursuant to rule 41(b) of the Idaho Rules of Civil Procedure of their action against Leon Paige, cross-defendant-respondent, a part of the judgment issued by Hon. Robert B. Dunlap, district judge retired, in a consolidated action on February 27, 1978.[1] Prior to the consideration of this appeal respondent Paige moved to dismiss it on the basis that Fousers, in taking a default judgment against Mrs. Booth, had elected their remedy and could not also proceed against Paige.

The appellants, Fousers, contacted the Brandt Agency, a licensed real estate agency, in order to buy real estate upon which to build a duplex. Brandt found a lot for sale on Nectarine Street in Nampa, Idaho, the subject matter of the action here. The Fousers, upon examining the property and deciding it was to their liking, signed an earnest money agreement on August 16, 1973, with the alleged owner, Shirley Helen Paige Booth, agreeing to pay $6,000 for the property. The Fousers paid $2,000 and signed a promissory note for the remainder. The appellants contacted the Grange Mutual Life Company and applied for a construction loan of $53,000. A preliminary title report was prepared by the Idaho Abstract and Title Company on August 22, 1973, wherein it was stated that the title to the property was vested in Shirley Helen Paige subject to the "Right, title and interest of Leon D. Paige, presumptively subject to the community interest of his wife, if married." A warranty deed was then executed by Booth conveying the lot to the Fousers. Papers for the loan were signed on September 23, 1973. Fousers claim they were told by the agent of Grange Mutual to wait three days until the mortgage was recorded and then to start construction, which they did. It does not appear that any heed was paid to the notation in the title report that Leon Paige had an interest in the property by the parties at that time.

In October, 1973, Fousers attempted to get advances on their loan and were told that since no title insurance policy had issued no funds could be advanced. No title insurance could be obtained because of respondent Leon D. Paige's interest in the real property. Fousers then talked with Brandt and based upon assurances from Brandt that the title defect would be corrected soon, they continued construction. They were assured, not only by Brandt, but by Grange Mutual, that the title problem could be corrected. Attempts made by Mrs. Booth's attorney to obtain a quitclaim deed from Paige were unsuccessful. Construction continued until mid-December 1973 when it became financially impossible for Fousers to continue the construction. Neither Fouser nor Paige contacted each other prior to the stopping of construction. At the time of the termination of construction, one duplex was 96% completed and the other 40% complete according to Fouser's testimony. Paige, the respondent, had knowledge of the construction according to assertions by the parties in October of 1973 and did not communicate either approval or disapproval of the construction.

In June, 1975, in a quiet title action by Shirley Paige Booth, plaintiff, against Leon

---

1. The consolidated action from which this appeal comes began as an action to foreclose a lien by J. W. Copeland Yards. Other materialmen hired by Fouser in his building effort also sought by separate actions to foreclose their liens. Various cross-claims and third party claims emanated from these actions. All causes of action have been settled by eight different judgments, except for Fousers' action against Paige, the subject matter of the appeal herein.

Paige, defendant, a decision was entered in Canyon County holding that the title to the property in question was vested exclusively in Leon Paige and that Mrs. Booth had no interest in the property. Mrs. Booth (then wife of Paige) had deeded her interest in the property to respondent Paige in 1959.

Fousers sought by their action against Paige to recover for the improvements made upon Paige's property during the time Fousers mistakenly thought they had title to the property. Following presentation of the appellants' case, the court granted respondent Paige's motion and dismissed the action pursuant to I.R.C.P. 41(b)[2] such being a determination of the cause on its merits.[3] As part of the findings of fact the court found that Paige "was not in any fashion, manner or means, unjustly enriched by virtue of any act or actions on the part of the [appellants]."

The essence of this appeal is whether the trial court erred in dismissing the appellants' action for restitution. We affirm the trial court's order.

Under the common law rule, one who mistakenly improved the property of another received nothing for such improvements. These improvements vested in the owner regardless of the good faith of the improver. 41 Am.Jr.2d Improvements § 2, pp. 480–81 and § 4, p. 482. The harshness of this old rule was gradually mitigated by

allowing the improver to use the improvements as a set off when the owner brought an action either to quiet title or in ejectment and sought rents and profits. I.C. § 6–414.[4] Mont.Code § 70–28–110; K.S.A. § 60–1004 (Kansas); *Dorer v. Hood*, 113 Wis. 607, 88 N.W. 1009 (1902). Restatement of Restitution § 42(1) p. 167 and comments a, b and c. In addition, a number of states have enacted "betterment statutes." Cal.Civ.Proc. § 871.1 et seq.; U.C.A. §§ 57–6–1 et seq. (Utah). Generally these statutes provide that an improver may bring an action and recover for improvements mistakenly made on the land of another if they were made in good faith and under color of title. *Erikson v. Stokes*, 120 Utah. 653, 237 P.2d 1012 (1951); *Lawrence v. Lawrence*, 231 Ark. 324, 329 S.W.2d 416 (1959).

▮ Prior to the enactment of I.C. § 6–414, Idaho abandoned the common law rules by judicial decision and permitted restitution for a mistaken improver. *Smith v. Long*, 76 Idaho 265, 281 P.2d 483 (1955). In *Smith*, the claimant asserted title as an adverse possessor. However, as the five year period had not been satisfied, no title had vested in the claimant. In addressing the claim for restitution for improvements made while in possession of the property the court stated:

2. "Rule 41(b). Involuntary dismissal—Effect thereof.—For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper

venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

3. The order also dismissed Fousers' action against Brandt. However, no appeal was taken from this part of the order.

4. "6–414. Occupant of real estate—Stay of execution for possession—When authorized.— Where an occupant of real estate has color of title thereto, and in good faith has made valuable improvements thereon, and is afterwards in a proper action found not to be the owner, no execution shall issue to put the owner in possession of the same after the filing of an action as hereinafter provided, until the provisions of this act have been complied with; provided said occupant may elect, after filing of the action, to exercise his right to remove such improvements if it can be done without injury otherwise to such real estate.

"It appears from the record that the [adverse possessor's] claim was initiated in good faith, and that they and their predecessors occupied the property adversely to the owners under color or claim of title . . . . Under such circumstances, if during such occupancy, they in good faith, made valuable, permanent improvements upon the property, they would be entitled to compensation therefor." 76 Idaho at 277, 281 P.2d at 491–92.

The *Smith* court adopted the two prong test generally encompassed in betterment statutes and set forth in I.C. § 6–414. An improver can recover if the improvements were made under color of title and in good faith. As in *Smith*, respondent Paige had quieted the title before the Fousers sought restitutional damages for improvements made in court I of their cross-complaint dated November 6, 1975. Therefore, the question is whether the improvements were made under color or title and in good faith as provided by I.C. § 6–414.

Under I.C. § 6–417, color of title is defined:

"For definition in this act, [§ 6–414–418] a person having color of title shall include (a) a purchaser in good faith at any judicial or tax sale made by the proper person or officer, whether such person or officer has sufficient authority to sell or not, unless such want of authority was known to such purchaser at the time of the sale, and (b) a person who has occupied a tract of real estate if he, or those under whom he claims, have at any time during such occupancy with the knowledge or consent, express or implied, of the real owner made any valuable improvements thereon; a person's right shall pass to his assignees or representatives; but nothing in this act shall be construed to give tenants color of title (i) against their landlords or (ii) against the state of Idaho or any subdivision thereof."

In addition, color of title has reference to something which has the appearance or gives the semblance of title but is not such in fact. *Munkres v. Chatman*, 3 Kan. App.2d 601, 599 P.2d 314 (1979). A writing of some sort purporting to give title which on its face professes to pass title which does not from want of title in the person making it, but not so obviously imperfect that it would be apparent to one not skilled in the law that it is not good is essential to a claim of color of title. *Kelley v. Kelly*, 293 Ky. 42, 168 S.W.2d 339, 342 (1943); *Raab v. Casper*, 51 Cal.App.3d 866, 124 Cal.Rptr. 590 (1975); *Munkres, supra.* The writing received by the appellants from Booth was a warranty deed which from its face appeared to pass good title. Therefore, we do not seriously question that the appellants were operating under color of title.

The remaining issue here is the question of good faith by the appellants in building on the property in question. While good faith in relation to mistaken improvements has not been defined in Idaho, a number of other jurisdictions have done so. Most states either in interpreting betterment statutes or judicial decisions have adopted definitions traceable to the bona fide purchaser cases. These definitions tend to emphasize the improver's good faith belief in his own title and the absence of any notice that another may be challenging his claim. *Etherington v. Bailiff*, 334 Mich. 543, 55 N.W.2d 86 (Mich.1952); *Vulovich v. Baich*, 286 App.Div. 403, 143 N.Y.S.2d 247 (1955); *Martin v. McCabe*, 358 Mo. 118, 213 S.W.2d 497 (1948); *Bryan v. Councilman*, 106 Md. 380, 67 A. 279 (1907). There is, however, a split among the jurisdictions as to what constitutes "notice" such as to defeat good faith. Some say that actual notice of an adverse claim is necessary. Included within the definition of "actual notice" is actual notice of some fact that would lead a prudent person to investigate further. *Johnson v. Stull*, 303 S.W.2d 110, 119 (Mo.1957); *Martin v. McCabe, supra.* Other jurisdictions hold that either actual or constructive notice negates good faith. *Worley v. Ehret*, 36 Ill.App.3d 48, 343 N.E.2d 237, 245 (Ill. App.1976) *following Clark v. Leavitt*, 335 Ill. 184, 166 N.E. 538, 539 (Ill.1929).

The appellant in the case at hand had actual notice of the title defect and of the respondent's interest. Although there

is some conflict in the record as to the actual date when the appellants learned of the respondent's interest, the preliminary title report of August 22, 1973, stated clearly that the interest of Mrs. Booth was subject to the interest of the respondent. Both Brandt, the realtor, and Fogelman, agent for Grange Mutual, testified that they informed the appellants of the title defect prior to his commencement of the improvements upon the property. We therefore decline to address the issue of whether constructive notice would defeat the claim for restitution as it is unnecessary to the resolution of this case. Under any definition of good faith, actual notice of another's interest negates the good faith necessary to recover in restitution.[5]

Appellants claim that because they relied on the professional advice of their realtor and lending agent that the title problem would be quickly resolved, that they did proceed in good faith. There is no conflict in the record that both of these agents thought the title would be easily cleared and did communicate such belief to the appellants. This does not change the fact that appellants had actual notice of the respondents' interest on or close to August 22, 1973, prior to commencement of building. *See Brandon v. Stone*, 162 S.W.2d 83 (Mo.App.1942); *Sugarman v. Olsen, supra*, 459 P.2d 545.

Appellant cites a number of Idaho cases in support of his claim. *Bastian v. Gafford*, 98 Idaho 324, 563 P.2d 48 (1977); *Hertz v. Fiscus*, 98 Idaho 456, 567 P.2d 1 (1977); *Bair v. Barron*, 97 Idaho 26, 539 P.2d 578 (1975). However, none of these cases involves a situation analagous to the case here. In *Bastian*, there was an oral contract between the parties to construct a building and the appellant had commenced with the plans. Following financing problems, respondent hired another architect. Appellant sought damages for goods and services rendered in preparing the plans. In *Hertz*, the respondent remodeled a restaurant-lounge business of appellants' pursuant to an oral lease and sought restitution for the work performed. Finally in *Bair* respondent was the lessee of the appellant and while such and pursuant to the lease agreement farmed the land. He sought recovery for work performed and material furnished while he was the tenant. In each of these cases, both parties were aware of the actions and had bargained for same.

Appellant lastly asserts that because the respondent knew of his building operation in October and did nothing to stop such construction, that respondent should not be allowed to retain the benefits of such construction without compensating the appellant. However, communication from the respondent would not have put the appellant in a different position, as he already had notice of the respondent's interest.

"Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law . . . ." *Bradley v. Cornwall*, 203 Md. 28, 98 A.2d 280, 285 (1953) *quoting* 2 Pomeroy's Equity Juris. § 419d.

The appellant was not prejudiced by the respondent's actions. *See Brandon v. Stone*, 162 S.W.2d at 86, *citing* 31 C.J.S. § 31, p. 324; 42 C.J.S. Improvements § 7, p. 435.

The trial court held that the respondent had in no way been unjustly enriched. While it is undisputed that the appellants expended large sums in building the duplexes, it is equally undisputed that these buildings are in "deplorable" condition and will require significant expenditures to make them habitable. In that we hold that the appellant did not build these duplexes

5. However, in *Sugarman v. Olsen*, 254 Or. 385, 459 P.2d 545 (1969), the court held that despite oral notification of the owner's interest, the fact that the improver had record title, title insurance, and there were no physical indications on the land of another's ownership, the improver had made the improvements in good faith. The evidence of good faith far exceeded the notice of adverse claim such that a prudent person would not really be expected to pay heed to the adverse claim.

in good faith, we decline to rule on whether the respondent was unjustly enriched.

No award of attorney fees is made to either party as there is no showing that this appeal was being maintained frivolously, unreasonably or without foundation. I.C. § 12–121; I.R.C.P. 54(e)(1, 2, 3); I.A.R. 40; *Shaw v. Bowman,* 101 Idaho 131, 609 P.2d 663 (1980).

The district court's order of dismissal pursuant to I.R.C.P. 41(b) is affirmed and the motion to dismiss the appeal is denied. Costs to respondent.

DONALDSON, C. J., and SHEPARD and BAKES, JJ., concur.

BISTLINE, J., did not participate.