619 P.2d 1116

**Frank GILLETTE, Plaintiff-Respondent,**

v.

**STORM CIRCLE RANCH, a Partnership, composed of Rancho, Inc., a corporation, Bobby Shults and Kendall Bingham, and Blincoe Farms, Inc., Defendants-Appellants.**

**No. 12953.**

Supreme Court of Idaho.

Aug. 12, 1980.

On Rehearing Dec. 18, 1980.

---

William A. Parsons of Parsons, Smith & Stone, Burley, for defendants-appellants.

Larry R. Duff of Goodman, Duff & Chisholm, Rupert, for plaintiff-respondent.

BAKES, Justice.

Defendant appellants Storm Circle Ranch and Blincoe Farms, Inc., bring this appeal from a district court judgment holding that they were unjustly enriched by work done by plaintiff respondent Frank Gillette. We have reviewed the proof presented at trial

and hold that the evidence and the trial court's findings and conclusions drawn therefrom do not support the unjust enrichment award entered against the defendants. Accordingly, we reverse.

In 1975 Gillette and Storm Circle executed a written lease agreement by which Gillette, the lessee, was entitled to possession of farmland owned by Storm Circle, the lessor, from April 1, 1975, to January 5, 1976. The parties' agreement also gave Gillette an exclusive option to purchase the property for $800,000 on terms specified in the option. Gillette's option was to expire on January 5, 1976. The lease agreement provided that Gillette was to do all work necessary to prepare the ground and to plant and harvest certain crops "with good farmer-like methods." Gillette's lease payments were to consist in part of a percentage of the crops harvested from the leased property.

Prior to entering into the lease option with Gillette, an unspecified portion of the leased property had been fall planted in wheat by Storm Circle in 1974, and Gillette irrigated and cut that crop in 1975. In the fall of 1975, after harvesting the 1975 crop, Gillette ripped, disked, irrigated and fertilized the land and planted alfalfa, barley and wheat, all to be harvested in 1976. However, although Gillette had intended to exercise his option to purchase the the property prior to January 5, 1976, the last date provided in the option, he was unable to obtain the necessary financing to do so.

The record suggests that Storm Circle was in serious financial condition. After Gillette's option expired without having been exercised, Storm Circle sold the property on January 23, 1976, to defendant appellant Blincoe Farms, Inc., for $700,000, and Gillette was directed to vacate the property. On February 5, 1976, Gillette filed a farm labor lien and seed lien and brought this action to recover from Storm Circle and Blincoe Farms, Inc., the value of the fall work he had performed while in possession of the land in 1975. Gillette sought recovery on two distinct theories: (1) foreclosure of farm labor and seed liens; and (2) unjust enrichment. The district court ruled that Gillette's farm labor and seed liens were not timely filed and were therefore unenforceable, but held that Gillette's farm work had inured to the benefit of both Storm Circle and Blincoe Farms, Inc. The court concluded that Storm Circle and Blincoe Farms, Inc., had been unjustly enriched by Gillette's work and were jointly and severally liable to Gillette for $17,712.09, the amount Gillette asserted the fall work had cost him.[1]

1. The dissents of Justice Bistline and of Justice *pro tempore* Hargraves both suggest that Storm Circle breached the option contract when it sold to Blincoe Farms. Thus, Justice Bistline states, "If there had been no contractual relationship at all between Gillette and Storm Circle, then Gillette would not have been in any position to complain about the money and time he had spent. But there was such a relationship; when Storm Circle violated the agreement creating that relationship, Gillette was entitled to recover that which he had expended." In the same vein, Justice Hargraves writes that Gillette's "failure to give notice of the exercise of the option prior to December 15, 1977, amounts to an automatic self activation exercise of the option," concluding that "Storm Circle would be obligated to tender a contract within a reasonable time and only then would the option expire in the event Gillette did not execute the contract of sale." Justice Hargraves points out that Gillette was still attempting to secure financing when the farm "was sold out from under him."

Whether those statements are a correct interpretation of the lease and option agreement was not an issue which was tried in this case and thus has not been resolved by either the trial court or by this Court on appeal. However, it is clear that the plaintiff Gillette did not interpret the option provision in the way suggested by the dissenting opinions. When he filed his action against Storm Circle he made no allegation that the option contained in the lease agreement had either been exercised by him or was subject to "automatic self activation." In fact, Gillette's complaint did not even mention either the lease or the option, and claimed no rights under either. His complaint alleged only that Storm Circle, through its managers Shults and Bingham "employed Plaintiff to perform certain work and labor in farming the said premises . . ." which the plaintiff alleged were owned by defendant Storm Circle. Blincoe Farms, Inc., was named a party defendant because it "claims some interest in said premises." In Count I, plaintiff alleged the reasonable value of his work to be $13,000.00, which he alleged was secured by

The essence of an action based upon unjust enrichment is the claim that the defendant has been enriched by the plaintiff and that it would be inequitable for the defendant to retain that benefit without compensating the plaintiff for the value of the benefit. *Hertz v. Fiscus*, 98 Idaho 456, 567 P.2d 1 (1977). The measure of damages in a claim of unjust enrichment is the value of the benefit bestowed upon the defendant which, in equity, would be unjust to retain without recompense to the plaintiff. The measure of damages is not necessarily the value of the money, labor and materials provided by the plaintiff to the defendant, but the amount of benefit the defendant received which would be unjust for the defendant to retain. *Nielson v. Davis*, 96 Idaho 314, 528 P.2d 196 (1974); *Continental Forest Products, Inc. v. Chandler Supply Co.*, 95 Idaho 739, 518 P.2d 1201 (1974). Applying these principles to the facts of this case, we conclude that the judgment against the defendants cannot be sustained.

First, as to the defendant Blincoe Farms, the trial court found that Blincoe Farms was aware that the fall work had been done by Gillette when it negotiated with Storm Circle in January of 1976 to purchase the property. We have carefully reviewed the record and do not find any evidence that Blincoe Farms was aware that the fall work had been done by Gillette when it negotiated with Storm Circle to purchase the property. While there was evidence that Blincoe personnel did help Storm Circle harvest its sugar beets in the fall of 1975, there is no evidence in the record to show that Blincoe was aware of any fall cultivating or planting which Gillette may have done. That finding of the trial court is clearly erroneous and must be set aside. I.R.C.P. 52.

Based upon the finding that Blincoe Farms was aware that the fall work had been done, the trial court concluded that "[t]he sale price between the defendants, Storm Circle Ranch and Blincoe Farms, Inc., was agreed upon and the labor and material furnished by plaintiff were included in that price." The record, however, contains no indication that the fall work was ever discussed by Blincoe and Storm Circle or that the price agreed upon by Blincoe and Storm Circle included the value of the fall work. The court's finding that Blincoe Farms was unjustly enriched is without evidentiary support and therefore must be set aside. Nevertheless, assuming that the Blincoe Farms had been aware that Gillette had done the fall planting, the foregoing finding of the trial court would indicate that Gillette's labor and materials were considered in arriving at the price which Blincoe paid and would negate any finding or conclusion that Blincoe was enriched by Gillette's labor and materials, whether unjustly or otherwise. If Gillette's labor and materials were included in the price that Blincoe paid, then as a matter of

the farm labor lien and seed lien; in Count II, plaintiff alleged that plaintiff furnished "304 cwt. of said Certified Wheat Seed at $11.50 per cwt. for a total sum of $3,496.00" which was secured by the same lien. Plaintiff then prayed for a judgment "against defendants jointly and severally . . . and that said sums be declared a lien upon said wheat crop of defendants . . . .." Subsequently, plaintiff amended his complaint adding Count III, alleging unjust enrichment, still without mentioning the lease or the option.

While the trial court made reference to the lease and option agreement and did state that "the plaintiff did not voluntarily surrender or abandon the premises, it was sold out from under him," the trial court never did find that the defendant Storm Circle had breached the option agreement. The trial court's statement that "it was sold out from under him" was made in relation to its conclusion of law "that the unjust enrichment doctrine applies to this case." There is nothing in the record that suggests that either the parties or the trial court ever viewed this case as involving the issue of whether the defendant Storm Circle had breached the lease-option agreement. In fact, the record suggests otherwise. It was the plaintiff Gillette who had the duty of performance, *i. e.*, obtaining the purchase price for the property in the manner provided for in the option. The record is clear that as of January 5, 1976, the final day for exercising the option, Gillette still had not obtained the necessary financing. As late as January 23, 1976, when the property was sold to Blincoe Farms, Gillette was still attempting to obtain financing.

law there could be no unjust enrichment on Blincoe's part, since the price it paid for the farm would have included the labor and materials. Because the trial court's findings are unsupported by the evidence, and even if supported do not support a conclusion that Blincoe Farms was unjustly enriched as a result of Gillette's fall work, the judgment against Blincoe Farms, Inc., must be reversed.

■■ We also conclude that the judgment against Storm Circle must also be reversed. Although Gillette submitted proof of the cost to him of his fall work, where Storm Circle sold the farm before the crops were harvested, mere proof of his costs was inadequate to establish the value of any benefit which Storm Circle may have received from that fall work. Unjust enrichment is an equitable doctrine and is inapplicable where the plaintiff in an action fails to provide the proof necessary to establish the value of the benefit conferred upon the defendant. *See Nielson v. Davis, supra.* Although damages need not be proven with mathematical precision, the damages, *i. e.*, the value of any benefit unjustly received by the defendant in an action based upon unjust enrichment, must be proven to a reasonable certainty. *Cf. Olson v. Quality-Pak Co.*, 93 Idaho 607, 469 P.2d 45 (1970); *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 415 P.2d 48 (1966) (damages for breach of contract must be proven to a reasonable certainty).

■ Gillette's proof of damages at trial was directed solely to the value of the labor and materials he expended in performing the fall work. But since Storm Circle did not harvest those crops, the only benefit which it could have received by plaintiff's work was an enhancement of the market value of the property. Although the district court concluded that the price obtained by Storm Circle included the labor and materials furnished by Gillette, the trial transcript contains no evidence that a price allocation was made by Storm Circle and Blincoe Farms, Inc., regarding Gillette's fall work. Had Storm Circle farmed the prop-

erty in 1976 and harvested the crops planted by Gillette, Gillette's proof at trial would have been adequate to support the trial court's finding of the value of the benefit received by Storm Circle from Gillette's fall work. However, when Storm Circle sold the property in January of 1976, prior to maturity of the crops planted by Gillette, any benefit received by Storm Circle as a result of Gillette's fall work could only have been reflected in an increased price received for the property. Gillette failed to present any evidence that the fall work affected either the price which Storm Circle received for the farm or the value of the farm. Because Gillette's proof at trial reflected only the detriment suffered by him and not the amount of benefit the work gave Storm Circle, the proof was inadequate to support a judgment based upon the theory of unjust enrichment. *Nielson v. Davis, supra.*

Furthermore, Gillette received the benefit of field preparation and planting done by Storm Circle in the fall of 1974 prior to Gillette's taking possession of the property in April, 1975. The value of that work would have reduced the value of Gillette's claim that Storm Circle was unjustly enriched by Gillette's fall work in 1975. Gillette made no showing of the value of the 1974 work which he benefitted from.

As a result of the proof which Gillette presented at trial, the damage award based upon the value of the benefits bestowed upon Storm Circle by Gillette's fall work must be purely speculative. For this reason, the district court's award of damages against Storm Circle must be reversed.

Costs are awarded to appellants. No attorney fees allowed.

DONALDSON, C. J., and McFADDEN, J., concur.

HARGRAVES, Judge Pro Tem., concurring in part and dissenting in part:

I will concur with the majority decision as it relates to Blincoe Farms for the reason that there was insufficient evidence in the record to show that Blincoe Farms was aware of the fall work which had been done

by respondent. I dissent with respect to Storm Circle.

## I

I do not agree with the majority's interpretation of the agreement that "Gillette's option was to expire on January 5, 1976." The pertinent part of the option read:

"(2) If the Option is not exercised by July 24, 1975, the Lessee shall give notice of the date it wants the Option to Purchase exercised and *if no notice is given prior to December 15, 1975, the Lessee shall purchase said property as of January 5, 1976,* on the terms as provided herein." (Emphasis added.)

The agreement also provides for the manner of payment in the event lessee is able to obtain financing and an alternative method if a "sufficient" loan is unobtainable. It is unclear under the alternative method just who is supposed to tender a "Contract of Sale of Real and Personal Property with standard terms and conditions," but it is clear that no payments were due (by Gillette) until either the contract was executed or until February, 1977. There was no requirement that Gillette make any payments between January 5, and January 23, 1976.

I believe the proper construction to be placed on this agreement is that failure to give notice of the exercise of the option prior to December 15, 1975, amounts to an automatic self-activating exercise of the option. Thereafter, Storm Circle would be obliged to tender a contract within a reasonable time and only then would the option expire in the event Gillette did not execute the contract of sale. It is clear from the record that Gillette was still attempting to secure financing when, as found by Judge Kramer, "It (the farm) was sold out from under him." There was never an offer by Storm Circle to reduce the purchase price to Gillette to assist him in the purchase.

## II

I feel that confusion rather than clarity will result from the majority statements relating to proof of damages. The opinion reads first: Gillette presented no evidence which would indicate the extent to which his fall work may have enhanced the *market value* of the property.

Then: It may be that Gillette's proof at trial would have been adequate to establish the value of any benefit received by Storm Circle from Gillette's fall work had Storm Circle farmed the property in 1976 and *harvested the crops planted by Gillette.*

Finally: Any benefit received by Storm Circle as a result of Gillette's fall work could have been reflected *only* in an increased price received for the property.

As I read this, there are three separate and inconsistent measures of damage set forth. The first is *market value.* The second is a *net profit* approach. Third is *market price.* Market value and market price may be, and frequently are, disparate, and neither relates to net profit.

In my opinion, the majority's reliance on *Nielson v. Davis,* 96 Idaho 314, 528 P.2d 196 (1974), is not well founded. There the action was to recover damages for improvements to undeveloped land. I feel that *Continental Forest Products, Inc. v. Chandler Supply Co.,* 95 Idaho 739, 518 P.2d 1201 (1974), is more applicable. In *Interform Co. v. Mitchell,* 575 F.2d 1270 (9th Cir. 1978), the Ninth Circuit Court of Appeals, when faced with the necessity of attempting to reconcile the apparent difference in the measure of damages enunciated in *Nielson* and *Continental,* had this to say:

"Although Idaho law appears to measure recovery under quantum meruit by the fair market value of the goods or services received and used by the defendant, while under 'unjust enrichment' the focus is on the value of the benefit which it would be unjust for the defendant to retain, Idaho has also recognized that generally there is no difference between the two. . . . Mitchell also suggests that recovery should be measured by the extent to which its assets were increased by the use of the forms, analogizing his situation to that of a defendant whose land has been improved by the construction of unbar-

gained for improvements. *See Nielson v. Davis,* 96 Idaho 314, 528 P.2d 196 (1974). The trial judge properly did not employ this less precise standard when a just and more precise one was available.

This more just and precise standard was the [net] rental price [of the forms]." 575 F.2d at 1278.

Thus, in *Interform* the Ninth Circuit followed the reasoning of *Continental,* in which case it seems apparent that plaintiff's proof was not directed at showing the value of (any) benefit received, but rather the value of the materials furnished by defendant. I believe that the "more just and precise standard" required in the case at bar is to measure the unjust enrichment by the value of Gillette's labor and material. This is the measure that would have been appropriate in the action to enforce the labor and seed liens which action failed simply for the reason that the lien claims were not timely filed.

### III

In further justification of denying Gillette any recovery, the majority says: "Furthermore, Gillette received the benefit of field preparation and planting done by Storm Circle in the fall of 1974 prior to Gillette's taking possession of the property in April, 1975. The value of that work would have reduced the value of Gillette's claim that Storm Circle was unjustly enriched by Gillette's fall work in 1975. Gillette made no showing of the value of the 1974 work which he benefited from."

In other words, respondent is required to prove not only his own claim but also an unasserted claim, or setoff, which Storm Circle may have had. I believe this to be an unfair double burden of proof never heretofore contemplated or required. In regard to any "claim," the following appears in the record:

"Q. [Mr. Parsons] . . . Did you reimburse Storm Circle for any of the work that they had done in the prior year in 1974 when you took it over?

"A. [Mr. Gillette] No, sir.

"Q. So when you say it's a standard practice, why didn't you pay them then for the work that they had done?

"A. Well, I will have to make a statement on that. I took the farm over as is with the understanding they could not come up with their share of the finance. I made the sprinkler payment. I paid the electrical bills, and all and this I figured compensated for what work they had done, me advancing the money.

"Q. In fact you were reimbursed with interest, were you not?

"A. I was reimbursed but I did loan them the money and they couldn't borrow from anywhere else. Maybe they could. They said they couldn't.

"Q. In this connection on your direct examination Mr. Duff inquired of you, Mr. Gillette, relative to $5,000 having been fully settled and I think the parties agree that that $5,000 was paid without prejudice to this lawsuit and it has no place in the lawsuit, that it was totally unrelated and it's not prejudicial to either party?

MR. DUFF: Yes, Your Honor, we are stipulating that for the record and the inquiry was so the Court would be aware there was a claim concerning the $5,000.

"THE COURT: Very well."

Thus, it would seem that Storm Circle was satisfied concerning any claim it may have had against Gillette, or at least was not pressing such claim.

I would affirm the district court's award of damages against Storm Circle, with costs awarded to respondent.

BISTLINE, Justice, dissenting.

Hargraves, J. Pro Tem., in his separate opinion points out the option here involved is, in his words, "automatic self-activating." There is enough merit to his thought on the option that it simply will not do for the Court to respond by a footnote, saying only that the "correct interpretation of the option is an unresolved and unresolvable issue in this case."

The trial judge's view in that regard certainly merits the Court's attention. He

viewed the lease agreement as embodying—not an ordinary option—but *"an agreement to purchase the property* by plaintiff" (Frank Gillette), and entered a finding to that effect. Such is undoubtedly a mixed question of law and fact, and perhaps more in the nature of a conclusion of law, but whatever it be called, until the Court's opinion sets forth grounds for declaring it erroneous, the Court should be bound thereby.[1] Likewise the trial court entered findings that Gillette, "pursuant to the written agreement . . . made application for loan to Federal Land Bank, but the loan was not approved," and "continued to attempt to obtain financing for the purchase after being turned down by the Federal Land Bank."

With the foregoing in mind, and mindful of the presumption against error on the part of a trial court's final judgment, it would seem that in arriving at a proper disposition of this case there should be more concern for the solving of the "unresolved and unresolvable issue." Until the Court can demonstrate in its opinion that the trial court erred in the resolution made by it, I feel on more sure ground in aligning with the views stated in the separate opinion.

The so-called optional portion of "the option" appears to have no other purpose than to create as an effective purchase date the first day of April, 1975, provided that an appropriate notice was given. Under that alternative Gillette would be entitled to *all* of the 1975 crops, but would concomitantly become obligated for accruing interest from the date of April 1, 1975. To gain the benefit of this provision Gillette was required to serve a written notice before the 24th day of July, 1975. From and after that date, however, Storm Circle was entitled to a division of the 1975 crops on the basis of the share-cropping percentages spelled out in the lease, but Gillette's obligation to pay the interest would commence as of the date of the execution of a formal contract of sale. Quite clearly the parties contemplated that Gillette could activate the purchase at such time as he saw fit up until December 15, 1975, but could only gain all the crop by doing so on or before July 24, 1975. And, if he did not accelerate as was his privilege to do, he was obligated as purchaser of the property as of January 5, 1976. It is an unusual arrangement, but there is no principle of law which requires that leases and purchase agreements must

---

1. One of the defendants, Mr. Shults, on direct examination by his own counsel, was questioned concerning the language in the lease agreement which made Gillette a purchaser as of January 5, 1975, in the event he had not prior thereto elected to become a purchaser at an earlier date:

"Q. Mr. Shults, one of the clauses in the exhibit that's before the Court on the lease and option to purchase says that Mr. Gillette will have purchased the property as of January 5, 1976. And are you aware of that clause?

"A. Yes.

"Q. At whose insistence was that put in the contract?

"A. As I recall the banks insisted that that be in there because we weren't in a position to refinance it at that point and insisted that it be written like that so Frank could actually take over with the option and purchase of it.

. . . . .

"Q. (By Mr. Parsons) What were the significance of any of the other dates that were put in like July 24th and as to the time to exercise?

"A. These were put in to give Frank the option, exercising the option to purchase the place at different stages and under different terms. I think one of them was if he exercised it at a certain time, he got all the crops, we didn't get any. Another one was we were paid our share as a lessor and I am not sure whether this covers all of them, but those were the two I can recall off hand.

. . . . .

On cross examination
By Mr. Duff:

"Q. Mr. Shults, as I understand your testimony, your testimony is to the fact that the option, particularly the way it was written, was the requirement of the bank, is that correct?

"A. That is my understanding.

"Q. That was before they continued to— perhaps I will rephrase that question. This was—the bank that held or services the loan on all the sprinkler equipment, Idaho First?

"A. This is right.

"Q. Basically said 'Mr. Gillette either agrees to buy at sometime between now and January 6th or we are not going to continue to finance?

"A. That's right."

always be ordinary and run-of-the-mill. The trial court was, as is always the case, far closer to this case than those who review from the distance and on a cold record, and there is no reason for the Court not to accept his understanding of the purport and tenor of the agreement.

What this case does not involve is the ordinary routine option to purchase. Had Gillette expended his time and money in preparing the ground and planting it to crops, all on his own expectations that he would obtain financing and would become the owner, thus protecting his investment, we would review an entirely different case. Under that arrangement I would tend to the view, which finds support in the authorities, that he has assumed the risk of expenditures, and has no cause for complaint when his plans go awry. But that is not this case.

Gillette was looking at an agreement which told him that he became purchaser on January 5, 1976, had he not taken advantage of his rights to purchase earlier. The trial court found that he was actively attempting to obtain financing when the property became no longer available, having been sold to Blincoe Farms, Inc. At that point in time he very well might have been able to successfully sustain an action to enforce his rights as purchaser; but he might have well concluded that it was better to merely seek redress for what he had plowed into the ground, so to speak. As to the first possible remedy which I mention, it is to be noted that the lease agreement, a trial exhibit, was not recorded until January 23, 1976, some four days after Blincoe Farms, Inc. agreed to buy the property. Of course Gillette could anticipate little chance of success in an action for specific performance if Blincoe Farms, Inc., purchased the property with the status of a bona fide purchaser for value without notice, and Gillette were unable to prove such was not the case. Gillette simply may have determined that he would attempt to recoup his actual losses and other than that charge the transaction up to experience gained.

In any event Gillette did not have the status of a volunteer who expended his effort and resources on his own judgment that he expected to be in a position to exercise an option to purchase—an option in the ordinary sense. Quite the contrary, he stood committed in writing to purchase the property, and was endeavoring to meet this obligation when, according to the trial court's findings, Bobby Shults (a partner in Storm Circle) "contacted Richard Blincoe, President of defendant Blincoe Farms, Inc., and offered to sell the property to him." If there had been no contractual relationship at that time between Gillette and Storm Circle, then Gillette would not have been in any position to complain about the money and time he had spent. But there was such a relationship; when Storm Circle violated the agreement creating that relationship, Gillette was entitled to recover that which he had expended.

As I read the opinion of the Court, the Court declines to meet head-on the trial court's holding that Gillette possessed the status of a purchaser. Instead the Court, notwithstanding the separate opinion of Judge Hargraves, holds fast to its unexplained conclusion that Storm Circle sold the property to Blincoe Farms, Inc., only "after Gillette's option expired *without having been exercised.*" As mentioned herein earlier on, this approach assumes that Gillette's option was of the garden variety, and ignores the trial court's finding that Gillette's option in this case was only in the form of a choice to accelerate the maturity date of the purchase agreement. In that manner the Court avoids discussing the language of the option, and avoids the central issue in the controversy.

From there the Court's opinion states the general rule that an unjust enrichment plaintiff must prove benefit to the defendant which it is inequitable for the defendant to retain without compensating the plaintiff for the value of that benefit. There should be no quarrel with that generality. Directing its energies toward invalidating the trial court finding that Blincoe Farms was unjustly enriched at Gillette's expense, the Court does not give any con-

sideration whatever to Gillette's obligation to establish that Storm Circle was unjustly enriched—rather the Court then directs its attack on the trial court judgment against Storm Circle by discrediting Gillette's proof of the damages to which he was entitled. I find much wrong with the Court's approach, and I fear that its redetermination of the issues not only brings about an unjust result in the case at hand, but leads to unsettling of the law both in damages and restitution.

In the first place the Court is inconsistent. If, as it declares to be the fact, Gillette was merely possessed of an option to purchase, an option which he failed to exercise, that should be the end of the case, and everything else which the Court has written is unsettling dicta.[2] As mentioned above, if a bare, garden variety option to purchase was all that Gillette had, and he did not exercise it, his position was no different from that of anyone who spends money and time improving property on the great expectation that he will have the necessary finances when the time comes. It is a calculated risk, and it happens all the time. It does not give rise to a claim of unjust enrichment.

Most farm leases are geared to crop years, not calendar years, but this was not an ordinary arrangement. As pointed out in the separate opinion by Judge Hargraves, and in the agreement itself, when Gillette took over the farming operation on April 1, 1975, crop was in the ground, but Gillette agreed to advance the power deposit and meet the monthly power payments, and also to advance the cost of Storm Circle's share of fertilizer costs, *and* also to pick up Storm Circle's overdue interest payment on the sprinkler equipment—all of which were Storm Circle obligations, with adjustment back to Gillette to be made on harvesting of the fall crops. This was no ordinary agreement. Yet the Court steadfastly, and without discussion, maintains that Gillette was required, but failed, to

exercise his option and was not a purchaser when Storm Circle sold to Blincoe Farms, Inc. If the Court is correct, there is no unjust enrichment issue.

But, if the trial court was correct in its conclusion that "[t]he written lease agreement between plaintiff and Storm Circle Ranch contained an agreement to purchase the property by plaintiff," then there was unjust enrichment. If there was unjust enrichment, Storm Circle, the other party to Gillette's transaction and agreement, was the party who received the benefit. Blincoe Farms, Inc., had no relationship whatever with Gillette, and absent any relationship it is not readily understood how Blincoe Farms, Inc., can be said to have been benefited at Gillette's expense. Even if Blincoe knew as a fact that there was crop in the ground when he purchased it from Storm Circle, I am at a loss to find any legal reasoning by which Blincoe can be held responsible for unjust enrichment to Storm Circle's property by Gillette in a transaction involving just those two parties. No matter what may have been the extent of Storm Circle's breach or violation of Gillette's right, Storm Circle, as owner of the property, other than for the undetermined legal effect of the agreement as creating a right in Gillette to seek specific performance, certainly had the right to sell its property to whomsoever and for whatever price. Storm Circle, on the other hand, could not shed itself of its obligations to Gillette simply by selling the property. The remaining question is whether it had an obligation. Again, had the "option" in question been the ordinary kind, and, were there no other extenuating circumstances, such as inducement or acquiescence, probably there would be no unjust enrichment.

Lamentably the Court launches into the damages issue without deciding the unjust enrichment issue—insofar as the judgment against Storm Circle is concerned. This alone is confusing. Presumably the Court assumes, arguendo, that the circumstances

2. This is the primary contention advanced in the brief submitted on behalf of Storm Circle and Blincoe Farms, Inc.

*did* give rise to a claim in unjust enrichment on Gillette's part—notwithstanding the Court's conclusion that he failed to exercise his option—and from there the Court finds the proof does not support the award. As one reason for denying Gillette's proof, the Court points to Storm Circle's sale of the property as destroying the probative effect of Gillette's evidence:

> "Had Storm Circle farmed the property in 1976 and harvested the crops planted by Gillette, Gillette's proof at trial would have been adequate to establish the value of any benefit received by Storm Circle from Gillette's fall work. However, when Storm Circle sold the property in January of 1976, prior to maturity of the crops planted by Gillette, any benefit received by Storm Circle as a result of Gillette's fall work could have been reflected only in an increased price received for the property."

This reasoning I find unfathomable. When the relationship between Gillette and Storm Circle was terminated, which relationship arose out of their lease agreement and Gillette's performance thereunder, Gillette either was or wasn't entitled to some recompense from Storm Circle, and I search in vain for any principle of law which would preclude Gillette from recovering from Storm Circle simply because Storm Circle sold the property, including the crops in the ground, before harvest time.

I find it naive in the extreme for the Court to premise its disposition of this case on the fallacious reasoning that Storm Circle's sale to Blincoe for $700,000 somehow establishes that Gillette's fall of 1975 work (crop in the ground) was not given any consideration in negotiations between Blincoe and Storm Circle. I am appalled that the Court in its retrial of the issues determines it to be of significance that Blincoe was able to purchase for $700,000 as against the $800,000 price nine months earlier agreed upon by Gillette and Storm Circle. There is no way in the world for the members of this Court to know whether the price agreed upon by Gillette was overly high, or whether the price to Blincoe was overly low. But, more than that, such considerations play no part in a proper resolution of the issues. Equally so with the Court's view that Gillette's proof was inadequate because of his failure to show the value of the work which he received from Storm Circle when he took the farm over in 1975. Whatever may have been the score on that, the parties entered into a written agreement, and presumably, and as a matter of law, their prior negotiations were merged into that agreement. Judge Hargraves states it well in his observation that the Court would require Gillette to prove not only his own claim, but also an unasserted claim or set-off which Storm Circle may have had.

The irrefutable fact remains that Gillette did seventeen thousand dollars worth of work on Storm Circle property, doing so not as a volunteer, but as a purchaser of that property. The work done was farm work, done on farm property. It included purchasing the seed and fertilizer and planting alfalfa, barley and wheat,[3] plus rock picking, irrigating, and land preparation. Shortly thereafter Storm Circle sold the property to Blincoe. A fair inference, and one properly for the trial court, was that Gillette's work, and his expenditures of money, improved the property in not less than the amount expended by Gillette. The trial court specifically found that that "fall work and seeding improved the premises." It is hard for me to visualize any trier of fact, be it judge or jury, with even the most modest background in farming, who would not infer and find that the cost of putting in a fall crop will ordinarily result in a like or greater value to the property. And, whether or not specifically mentioned in negotiations between Blincoe and Storm Circle (to which Gillette was not privy), another fair inference for the trier of fact was that the $700,000 agreed price would have reflected something for the crop in the

---

**3.** Not counting the cost of machinery, labor, and fuel, the feed and fertilizer put into the ground at Gillette's expense exceeded $6,000.

674

ground, even though it may not have been specifically discussed by those parties.

So much for unjust enrichment. It also seems to me that even though Gillette may have chosen not to pursue a claim for specific performance, where Storm Circle did sell the property in derogation of Gillette's status as a purchaser by virtue of the lease agreement sale provisions, he was equally entitled to recover what he had put into the ground on the basis of damages or restitution for breach of that agreement.

Although I have on prior occasions questioned the freedom with which this Court will affirm a trial court judgment, "although erroneous on the grounds relied upon by the trial court, but upon another correct theory"—where it has not been pleaded—in this particular case there is so little difference, if any, in Gillette's right of recovery either for restitution following breach of contract, or damages for breach of contract, that the Court on that ground should find itself affirming the judgment.

Although the Court reverses the compensation awarded to Gillette by the trial court, and presumably the judgment as well, proceedings on remand are unspecified. I would assume that, as is the usual case, where the plaintiff is held to have proceeded below on an incorrect theory of damages, but the record shows that alternative theories are available upon which he might prevail, a new trial is indicated as the appropriate further proceeding.

*ADDENDUM*: Following the penning of the foregoing, footnote 1 of the Court's opinion (written in response to the separate opinion of Judge Hargraves) was expanded in order to also respond to that which I had written. In the process of doing so the "unresolved and unresolvable issue" language was dropped, and the Court now, without challenging the interpretations put on the lease and option agreement, declares that a correct interpretation "was not an issue which was tried in this case and thus has not been resolved by either the trial court or by this Court on appeal."

It is readily apparent that the issue has not been resolved by this Court. Indeed,

such was the main theme of my earlier effort. It is equally apparent that the trial court *did* resolve the issue, and I say correctly did so. Rather pointedly, so I thought, attention was drawn to the trial court's finding that "[t]he written lease agreement between plaintiff and Storm Circle Ranch contained an agreement to purchase the property by plaintiff."

The central issue in the case, as I suggested at my first writing, is whether the trial court was in error in its determination that the parties had a firm agreement to purchase within the confines of the lease-option agreement. I have already mentioned that the Court avoids that issue. Notwithstanding that, in the rewritten footnote the court continues to contend that Gillette failed to exercise the option by the January 5th deadline, steadfastly ignoring that the option was *not* an ordinary option to purchase, but only an option to accelerate the purchase date. The trial court correctly held that the agreement of the parties contained an agreement to purchase. Until the 5th day of January, if Gillette did not exercise the option, he was in possession as a lessee. On the 5th day of January he was in possession as a purchaser, but he could have terminated the lease and could have become a purchaser earlier by exercising the option. Once he exercised the option, however, or, if not, then on the 5th day of January, he stood obligated to come up with the purchase price under the various methods outlined in the parties' agreement. If he then failed to come up with the purchase price under the methods specified, he was in the same position as any contract purchaser of real property who is unable to meet his commitments, *i. e.*, subject to termination of the agreement after reasonable notice of default, or subject to an action for the purchase price. *Williamson v. Smith*, 74 Idaho 79, 256 P.2d 784 (1953).

Having taken an untenable position, the Court utilizes the balance of footnote 1 to make statements which supposedly support its view that the interpretation of the agreement had not been an issue in the trial

court, and need not be decided in this Court. Those statements, however, are not substantiated. In denying a defendant's motion for involuntary dismissal at the close of plaintiff's case the trial court specifically noted that while the agreement might be subject to several interpretations, he interpreted it as making Gillette the purchaser as of January 5th. Although this was his oral ruling, he also reduced it to writing in his findings and conclusions.

Entirely overlooked or ignored by the Court in its opinion is a significant paragraph in the claim of lien which was attached to the complaint filed by Gillette, and which explained the circumstances which caused him to expend the effort and money which was the basis of his suit: "That said work was done by Frank Gillette pursuant to a Lease Agreement with Option to Purchase between Storm Circle Ranch and Frank Gillette, Claimant."

Also ignored in the Court's opinion is how the foregoing portion of Gillette's complaint ripened into the issue of whether he was or was not a purchaser on and after the 5th day of January. At trial the agreement was offered in evidence by Storm Circle, who in joining with Blincoe Farms, Inc., in a single answer to the complaint, specifically pleaded as a third affirmative defense:

"1. In May, of 1975, the plaintiff and defendant Storm Circle Ranch, entered into a Lease Option Agreement. The real estate described in paragraph 3 of the complaint was the object of the lease and option agreement.

"2. The defendants are informed and believe that the claim of the plaintiff arises by virtue of that lease and option agreement. . . ."

The two defendants in moving for summary judgment relied upon the affidavit of Bobby Shults, which stated:

"3. That if the plaintiff did any of the work, furnished any of the materials, or performed any other act or acts of which he complains then in such event such were done by the plaintiff as a volunteer or under a contract of which the plaintiff had an option."

Such should serve to make it abundantly clear that Gillette, in the first instance, and Storm Circle in the second, raised the question of the circumstances which brought about Gillette's possession and occupancy of Storm Circle's farm from October through December, during which months Gillette spent the money and expended the effort of doing the work for which he would later seek recompense when Storm Circle sold the farm to Blincoe Farms, Inc. Surely it is obvious that Gillette did not simply pick a farm at random and invest $17,000 in it, and it is doubtful that Storm Circle really contends that he did so wherein it alleged that he acted "as a volunteer." Rather, Storm Circle recognized, as did Gillette, that he was in possession under a lease the term of which expired on January 5th, unless it was sooner terminated by his having exercised his right to accelerate the purchase date and gain all of the crop for the crop year 1975. Hence Storm Circle made its allegation and placed in evidence the agreement of the parties. The trial court accepted the exhibit, and reached a determination that Gillette had, just as Shults testified, entered into an agreement to become a purchaser for $800,000 as of January 5, 1976, provided he had not elected to become a purchaser at some earlier date.

The fact that Gillette's attorney in filing the complaint did not specifically allege that Gillette's possession on and after January 5th was that of a purchaser is of no consequence. Had it been so alleged, it would have but the pleader's conclusion as to the legal effect of the agreement, and, as such would not have precluded the trial court from the exercise of his right and duty to construe or interpret it. The trial court necessarily had to do this in order to determine the status of Gillette during the period of time when he did the work in question.[4]

4. The Court in its opinion seems unaware of the recent opinion handed down in *M. K. Transport, Inc. v. Grover*, 101 Idaho 345, 612 P.2d 1192 (1980), wherein is found this language, which would surely be applicable were there any doubt as to what issues were here tried:

I think also that there is merit in the trial court's conclusion, totally untouched in the Court's opinion, that Gillette "would have breached his written lease and option with defendant, Storm Circle Ranch, if he had not done the fall work and no option would have existed." As the trial court readily saw, Gillette's status at the time he did that fall work was that of lessee who would become purchaser—either on the 5th day of January, 1976, or sooner if he wanted to accelerate the purchase date. But so long as he remained lessee, it behooved Gillette to do whatever a good lessee would do with the premises which he occupied. So viewed, a lessor could reasonably expect such conduct on the part of the person he has placed in possession, and should expect in equity and good conscience to make it right, especially when it was his own circumstances which forced him to sell to another (Blincoe) while Gillette was actively attempting to raise the purchase price to which he had agreed.

Primarily, as I earlier pointed out, hoping to turn the Court in the other direction, Gillette did, as the trial court found, have the status of purchaser at the time Storm Circle made its deal with Blincoe Farms, Inc. He was not a volunteer, and there is no principle of law or equity which would deny him recovery where his seller summarily sold the farm to another. That he restricted his attempt at recovery to a claim for just what he had put into the ground, and his effort in so doing, rather than seeking to prove up a claim for specific performance, or for damages for breach of contract, does not in any way provide a defense to Storm Circle. A similar case some years ago found the Court in a more comprehending stance. In *Froman v. Madden*, 13 Idaho 138, 88 P. 894 (1907), Mrs.

Madden bought a city block in Caldwell from a corporation, but made no improvements, and did not record her deed. The corporation then sold to Mr. Froman the same block, Mr. Froman knowing nothing of the earlier sale to Mrs. Madden. The latter, not knowing of the sale to Froman, had meanwhile fenced the block and erected a house. Froman was the first to record his deed, however, and as it turned out Mrs. Madden lost the lot and the house, much the same result as in the recent case of *Fouser v. Paige*, 101 Idaho 294, 612 P.2d 137 (1980).

Gillette may find comfort, if not recompense, in that which the Court said in 1907 as to the actions of the corporation which, having sold the property to her, then sold it a second time in derogation of her rights:

"Respondent complains of the hardship of this case for the reason, as counsel insists, that she will be obliged to lose her home and the improvements placed upon the land. If her deed had been recorded as provided by law, she would not have taken the risk of such loss. But we can see no reason why she should not receive full compensation for all of her improvements and expenditures, both in time and money; and, indeed, *if the land company that undertook to sell and convey this land twice does not amply and fully compensate her, they should be dealt with under the criminal laws* as provided by section 7097, Revised Statutes [1887]. It is clear to us that *there has either been an offense committed by and on the part of this company* as defined by the provisions of section 7097, *or else they have been guilty of the grossest negligence*; in either of which cases they should be made to respond in all damages sustained by the defendant." 13 Idaho at 145, 88 P. at 896. (Emphasis added.)

"However, we cannot agree with appellant that as a result of the parties' claims for damages for breach of contract the court was necessarily precluded from deciding the case on a rescission theory, had that theory been properly before the court. Under modern pleading rules parties may seek alternative or different types of relief regardless of consistency or whether based on legal or equitable grounds or both. *See* I.R.C.P. 8(a)(1) and 8(e)(2). Modern pleading practice no longer prohibits parties from seeking alternative forms of relief even if the remedies sought are inconsistent. For example, in an action on contract a plaintiff may claim both damages and restitution, *with the ultimate election to be made by the court.*" (Footnote omitted.) (Emphasis added.)

ON REHEARING

BAKES, Justice.

Petition for rehearing having been granted in the above entitled cause and the case rebriefed and reargued,

The Court adheres to the views expressed in the Court's original opinion.

BISTLINE, Justice, dissenting:

Further argument in the case only served to strengthen my views as earlier expressed, to which I continue to adhere.

HARGRAVES, Judge pro tem., dissenting:

In the original opinion before rehearing, I had concurred in part and dissented in part. After rehearing, and again considering the additional briefs and arguments presented by counsel, the position I took early on in this case has been reinforced as it relates to appellant's assignment of error impugning the trial court's finding that Blincoe Farms had knowledge of Gillette's farm work when it purchased the property. I now believe that the trial court's finding in this respect is supported by substantial and competent evidence. The record discloses that Blincoe had owned the adjoining farm for some 25 years and during the time of the fall harvest drove past or near the Storm Circle property frequently, knew that Gillette had farmed the land in the fall of 1975, was on the farm during the beet harvest in 1975, and was able to compare the crops and general appearance of the Storm Circle farm in the fall of 1975 *vis-a-vis* 1974. Otherwise, I adhere to the views expressed in my original dissent and would affirm the district court's award of damages against both Storm Circle and Blincoe with costs awarded to respondent.